(No. 34534.—

COYNE ELECTRICAL SCHOOL, Appellant, *vs.* HERBERT C. PASCHEN, County Collector, *et al.,* Appellees.

*Opinion filed November 20, 1957.*

388

PETER B. ATWOOD, of Chicago, (IRWIN N. WALKER, and WALKER & ATWOOD, both of Chicago, of counsel,) for appellant.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (L. LOUIS KARTON, and FRANCIS X. RILEY, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Claiming exemption both as a school and as a charitable organization, Coyne Electrical School, a corporation not for profit, filed a complaint in the circuit court of Cook County to enjoin the collection of taxes on its property for 1951 and 1952, and to perpetually enjoin the county collector and other officials from assessing and collecting taxes on its real and personal property. A master, who heard the evidence in the cause, concluded that plaintiff was a school but not a charitable organization; the chancellor found it was neither and denied relief. The revenue being involved, plaintiff has appealed directly to this court for review.

Section 3 of article IX of our constitution provides that the General Assembly may, by laws general in their application, exempt from taxation such "property as may be used exclusively * * * for school * * * and charitable purposes." Accordingly, the legislature has exempted, first, "* * * all property of schools, including the real estate on which the schools are located and any other real estate used

by such schools exclusively for school purposes, * * *." (Ill. Rev. Stat. 1951, chap. 120, par. 500(1),) and, second, "All property of institutions of public charity, all property of beneficent and charitable organizations, * * * when such property is actually and exclusively used for such charitable or beneficent purposes, * * *." (Ill. Rev. Stat. 1951, chap. 120; par. 500(7).) It is under these two provisions that the plaintiff claims exemption, and in considering such claim it is to be borne in mind that courts have always taken the position that statutes granting tax exemption should be construed strictly in favor of taxation, (*People ex rel. Gill* v. *Trustees of Schools,* 364 Ill. 131; *In re Petition of Walker,* 200 Ill. 566; *International College of Surgeons* v. *Brenza,* 8 Ill.2d 141,) and have held that the burden is on the person asserting the claim of exemption to prove clearly and conclusively that the use of the property in question is within both the constitutional authorization and the terms of the statute under which the claim of exemption is made. *People ex rel. Kelly* v. *Avery Coonley School,* 12 Ill.2d 113; *People ex rel. Cannon* v. *Southern Illinois Hospital Corp.* 404 Ill. 66.

Facts pertinent to plaintiff's claim that it is a school within the meaning of the constitution and the exemption statute show that it was reorganized as a nonprofit corporation in 1950, "to provide courses of study relating to, but not necessarily limited to, electricity, radio, radar and electronics generally." The school does not teach mathematics, rhetoric, language, science, history, or the like, but has a curriculum of seven courses bearing the following titles: Electrical and Refrigeration Course, Radio and Refrigeration Course, Combined Electrical and Radio-Television Course, General Electrical Technicians Course, Radio-Television Service Course, and Electrical and Radio-Television Service Course. These courses vary in length from 18 to 66 weeks and in cost from $300 to $1100. Thirty-five hours of instruction, embracing both shop and theory, is

given each week, and students, who need only a high school education or the ability to pass an entrance test to qualify for enrollment, must maintain an average of 75 per cent or better to merit a diploma. To qualify as an instructor for the plaintiff it appears that one need only be a high school graduate with six years experience in the subjects taught and, in this regard, the defendants introduced evidence that at least 14 of plaintiff's 65 instructors had not graduated from high school and that at least 20 others had no more than a high school education. Judicial notice may be taken, therefore, that many of plaintiff's instructors are not qualified to teach in common schools or high schools of this State. (See: Art. 21, School Code, Ill. Rev. Stat. 1951, chap. 122, pars. 21—1 *et seq.*) During 1951, 1952 and 1953 plaintiff trained approximately 5,000 students a year, many of them servicemen who received financial aid from the Veterans Administration under the so-called G.I. Bill of Rights.

Plaintiff urges that under modern concepts of education, as reflected by decisions in other jurisdictions and by legislation in our own State, it is a "school" within the plain meaning of the term as employed in both the constitution and the exempting statute. The defendants, however, insist that the constitutional meaning of the term has not been altered and contend that plaintiff is not a "school" for the purposes of tax exemption within the definition arrived at in the decisions of this court.

Little aid can come to the plaintiff from the decisions in other jurisdictions for it is apparent that courts of other States are divided as to the taxable status of the class of institution into which the plaintiff falls. See: *City of Detroit v. Detroit Commercial College,* 322 Mich. 142, 33 N.W.2d 737; *City of Birmingham v. Birmingham Business College,* 256 Ala. 551, 56 So.2d 111; *German Gymnastic Ass'n v. City of Louisville,* 306 Ky. 810, 209 S.W.2d 75, favoring taxation; and *Lawrence Business College v. Bussing,* 117

*Kans.* 436, 231 Pac. 1039; *Board of Commissioners of Tulsa County* v. *Tulsa Business College,* 150 Okla. 197, 1 P.2d 351; *Wilson's Modern Business College* v. *King County,* 4 Wash.2d 636, 104 P.2d 580, granting exemption.

Speaking in *People ex rel. McCullough* v. *Deutsche Gemeinde,* 249 Ill. 132, wherein exemption was denied a religious corporation which used its property for "religious uses generally, and school uses," the court said, at p. 137: "A school, within the meaning of the constitutional provision, is a place where systematic instruction in useful branches is given by methods common to schools and institutions of learning, which would make the place a school in the common acceptation of the word. What are called schools are conducted for teaching dancing, riding, deportment and other things, which are not schools in the ordinary sense." This restrictive definition was applied in the recent case of *People ex rel. Brenza* v. *Turnverein Lincoln,* 8 Ill.2d 198, to deny tax exemption to an institution which conducted classes in swimming and gymnastics, even though it was recognized such instruction was educational in a broad sense and in fact a part of the curriculum in ordinary schools. In that case we further restricted the constitutional meaning of the word "school" by adopting the view that constitutional tax exemption for private educational institutions was intended to extend only to those private educational institutions which provide at least some substantial part of the educational training which would be otherwise furnished by various publicly supported schools, and thereby lessen the tax burden imposed upon our citizens as the result of our public educational system.

On the basis of the foregoing decisions it is manifest that two things are necessary to qualify a private institution for tax exemption as a school: first, a course of study which fits into the general scheme of education founded by the State and supported by public taxation; second, a course of study which substantially lessens what would otherwise

be a governmental function and obligation. In the case at bar there is neither a claim nor a showing that plaintiff's course of study fits into the scheme of education offered by public schools. Neither is there a showing that the instruction given by plaintiff substantially lessens the burden of taxation occasioned by our public school system. Thus whether plaintiff's activities are measured by the restrictive meaning which has attached to the constitution and exempting statutes, or by the public gain which must inure before property is released from bearing its proportionate share of taxes as required by section 1 of article IX of the constitution, it is apparent that its claim to exemption must fail.

The plaintiff urges that the restrictive definition of a "school" employed in *People ex rel. McCullough* v. *Deutsche Gemeinde,* 249 Ill. 132, was broadened in the later case of *School of Domestic Arts and Science* v. *Carr,* 322 Ill. 562, and also that it has become outmoded because of our legislature's recognition of vocational schools. We do not find, however, that either contention lends aid to plaintiff's bid for tax exemption. In the *Carr case* an institution teaching the domestic arts of cooking and homemaking sought exemption both as a school and as a charitable organization. The court, after a painstaking inquiry into the characteristics needed for exemption as a charity, concluded the appellant was a charity because the courses it taught "indirectly benefits the public and improves the happiness of man." In arriving a such conclusion the court said: "In the case at bar the school is supported by pay students, the proceeds from the public restaurant and gifts from various people. The facts alleged and admitted are that no profit whatever is made; that a deficit exists each year and is paid by gifts from benevolent women; that every cent of revenue goes toward the operation of the school, which, so long as seating capacity remains, receives all girls or women applying, whether able to pay for such instruction or not." Throughout the opinion the appellant was referred

to as a school and, without discussion or analysis, the court concluded its opinion by stating: "The facts presented in this record show the property was used exclusively for school purposes and should be held exempt from taxation under the first paragraph of section 2 of the Revenue Act." In view of the previous finding that appellant was a charitable organization exempt from taxation under the seventh paragraph of section 2 of the Revenue Act, it would appear that the finding of exemption as a school was surplusage. Additionally, we find no reason to say that the court's assumption in that case, without any analysis of the issue, serves either to broaden the constitutional definition of a school earlier established, or to bind us in this case. Each individual claim for tax exemption must be determined from the facts presented. *People ex rel. Goodman* v. *University of Illinois Foundation*, 388 Ill. 363; *People ex rel. Pearsall* v. *Catholic Bishop*, 311 Ill. 11.

Nor is the plaintiff aided in its claim to a broader definition by the fact the legislature, in 1909, amended the Revenue Act to exempt "schools" rather than "institutions of learning," (See: Laws of 1909, p. 309, amending Ill. Stat. 1872, chap. 89, par. 437,) or by the further fact that the legislature has recognized vocational schools by adopting a statute that regulates and licenses them. (See: Ill. Rev. Stat. 1951, chap. 144, pars. 17j-17j.36.) As to the former, the legislature did no more than to make the statute use the term employed in the constitution; as to the latter, it is sufficient to say, without analysis of whether the constitution would so permit, that the legislature has made no attempt to bring vocational schools within the provision of the Revenue Act which implements the constitutional authority to exempt school property. It should be noted, too, that plaintiff is not a vocational school within the definition of the statute. (See: Ill. Rev. Stat. 1951, chap. 144, sec- 17j.6(6).) Similarly, the circumstance that the Veterans Administration has considered the plaintiff an institution at

which eligible veterans may pursue "education or training" does not serve to bring it within our Revenue Act, or to alter the constitutional definition of a school. Apart from the fact that the Federal regulations themselves distinguish between "education" and "training," it does not follow that training at the plaintiff institution is either indicative or conclusive on the matter of its exemption. We conclude the court below properly refused to define the plaintiff corporation as a school exempt from taxation.

Facts relating to the plaintiff's claim that it is an "institution of public charity" and a "beneficent and charitable organization," so as to be exempt from taxes under section 19(7) of the Revenue Act, (Ill. Rev. Stat. 1951, chap. 120, par. 500(7),) date back to 1899 when the Coyne National Trade School was founded. Bennett W. Cooke, the plaintiff's president in 1951 and 1952, joined the school in 1909 and became its manager in 1912. In 1919, after the name had been changed to Coyne Trade and Engineering School, Cooke purchased the school and thereafter served as its president and general manager until 1926 when it was reorganized as the Coyne Electrical School, Inc., a Delaware corporation organized for profit. At that time the school issued capital stock, as well as bonds valued at $1,118,000, and of these Cooke received 85 per cent and H. C. Lewis, the school manager, received 15 per cent. The school continued on this basis until 1941 when Cooke and Lewis made an agreement whereby each acquired 50 per cent of the stock and outstanding bonds. In 1946, following the death of Lewis, Cooke purchased the latter's stock for $84,000 and his bonds for $485,000, subject to a condition that a debt of $99,000 owed by Lewis to the school would be paid. From that time until the plaintiff-successor corporation was organized, either Cooke or his wife owned all of the stock and outstanding bonds, as well as all the shares of stock in a building corporation which leased its premises to the school.

On April 30, 1950, the present plaintiff, Coyne Electrical School, was organized under the laws of Illinois as a nonprofit corporation and 'took over the assets of the Delaware corporation, subject to its liabilities. The Delaware corporation then had $304,200 cash on hand, all of which was subsequently used to retire bonds and to pay interest thereon, leaving outstanding bonds of $107,000 which the plaintiff assumed. Cooke and his wife, being the sole owners of all the bonds, received the $304,200.

Concurrent with the organization of the plaintiff corporation, a plan was submitted to the Commissioner of Internal Revenue whereby plaintiff proposed to acquire all the assets and stock of the predecessor corporation for the sum of $1,450,000. In addition plaintiff planned to purchase for $375,000 the building leased to the school by the Coyne Building Corporation, and to purchase at a cost of $45,000, another school building owned by Cooke and his wife. The total expenditure of $1,870,000, which was found in this proceeding to represent the fair market value of the assets purchased, was to be paid by a cash payment of $8,000 and by installment bonds issued by plaintiff in the aggregate amount of $1,862,000. Thereafter, in September and October, 1950, plaintiff received rulings from the Bureau of Internal Revenue exempting it from Federal income taxes under the provisions of section 101(6) of the Internal Revenue Code, and proceeded to put its plan into effect. This proceeding claiming exemption from the real and personal property taxes of the State has followed.

After first reciting that plaintiff was organized for the purpose of conducting schools relating to electricity, radio, radar and electronics, and for the conduct of extension courses and the distribution of scientific literature, its articles of incorporation state: "(d) To do all other things necessary or convenient in connection with such educational work in the conduct of such schools as may be established from time to time, not for pecuniary profit and not for

the pecuniary profit of the members of the corporation, and to devote the corporation's funds and resources thereto." Cooke, who died when this litigation was in progress, was the president of the plaintiff, for which he received an annual salary of $50,000, and, along with two employees, was a member of the board of trustees. All bonds issued by the plaintiff are presently owned by members of Cooke's family, and while they do not bear interest as such, there is due on each a premium calculated at 4 per cent of the issue price, so that the premium on each installment increases four percentage points each year. Nothing had been paid on these bonds, or upon those assumed from the Delaware corporation, at the time this cause was commenced in 1952. As previously related, plaintiff's income is derived from tuition fees ranging from $300 to $1100 and it appears that students may sign a contract for payment if they do not have sufficient cash at the time of enrollment.

Plaintiff insists the business and affairs relating to the predecessor corporation for profit have no bearing on the issue here and contends it is a charity because, as provided in its charter, all its earnings and resources are devoted to the school purposes for which it was organized, and no part of which are used for the benefit of any individuals or directed for private gain. The defendants, however, contend that plaintiff fails to qualify as a charity within the scope of the Revenue Act for the following reasons: (1) Conducting a not-for-profit school is not a charity; (2) the record is devoid of charitable activity by the plaintiff; and (3) every penny of income after overhead accrues to the direct benefit of the Cooke family, the owner of all securities in all of the corporations involved in this action.

To qualify property for exemption from taxes as a charity under our constitution and statute, two things are required: First, ownership by a charitable organization; second, its exclusive use for charitable purposes. (*Rogers Park Post No. 108* v. *Brenza*, 8 Ill.2d 286.) Charity does

not necessarily mean almsgiving but, in a broader sense, is defined as an application of property for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering and constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens on government. (*Crerar* v. *Williams,* 145 Ill. 625; *People ex rel. Cannon* v. *Southern Illinois Hospital Corp.* 404 Ill. 66.) However, to qualify property for exemption from taxes, the benefits must accrue to mankind directly. (*People ex rel. Graff* v. *Passavant Memorial Hospital,* 342 Ill. 193; *People ex rel. Baldwin* v. *Withers Home,* 312 Ill. 136.) It is not enough that incidental benefits may come to the public as a result of the property's use. *International College of Surgeons* v. *Brenza,* 8 Ill.2d 141.

When the foregoing principles are applied to the proof in the case at hand it becomes apparent that plaintiff is not a charitable organization and that its property is not devoted to charitable purposes. Seizing upon the broad concept which envisions a charitable use to be almost anything that tends to promote the well-doing and well-being of man, plaintiff argues, in effect, that any private school or educational institution whose charter provides that its funds and resources will be devoted to school purposes, and that it is organized not for pecuniary profit and not for the pecuniary profit of its members, is thus constituted a charitable organization, and that the use of its property for school purposes is a charitable use. This is a misapprehension. In the first place we have held that whether or not profit is made is not of controlling importance in determining what is meant by a charitable purpose in the statutory sense. (See: *Oak Park Club* v. *Lindheimer,* 369 Ill. 462; *Continental Illinois Nat. Bank* v. *Harris,* 359 Ill. 86; *Turnverein "Lincoln"* v. *Board of Appeals,* 358 Ill. 135; *Congregational Publishing Society* v. *Board of Review,* 290 Ill. 108.) The mere state-

ments in plaintiff's charter that its educational work will not have pecuniary profit as a motive and that its resources shall be devoted to school purposes do not reflect charitable acts. Secondly, the use of property as a place of instruction may be a charitable use in some instances but not in others. Demonstrative of this conclusion are *Turnverein "Lincoln" v. Board of Appeals*, 358 Ill. 135, and *School of Domestic Arts and Science v. Carr*, 322 Ill. 562. In the first case, where the organization used its property to conduct classes in English, German, physiology, anatomy, life-saving, first aid and dramatics, such use was held not to be a charitable use, even though a library was maintained and some children were admitted free to physical education classes, because it was limited to members who paid dues and to nonmembers who paid fees. On the other hand in the *School of Domestic Arts case,* which is relied upon by the plaintiff, the use of property for teaching courses in domestic arts, such as cooking, serving and sewing, was found to be a charitable use under circumstances which showed the instruction was given to all persons applying, whether able to pay or not, that tuition rates were based upon ability to pay, that needy students were provided with board, and that operating deficits, which occurred each year, were made up by gifts from benevolent women.

Measured by these decisions it is apparent that plaintiff's activities, however laudable or beneficial they may be, do not serve to make it a charitable organization. So far as the record shows, plaintiff's income is derived solely from tuition fees and from the sale of books to students. In its zeal to increase its enrollment and income, plaintiff, as did its predecessor for profit, pays to its students and graduates a commission for procuring new students. If a student does not pay tuition, or sign a contract for future payment, plaintiff's instruction is not forthcoming. Thus, as the defendants have put it, the plaintiff does nothing for anyone for which it does not expect to be paid in full. Under

such circumstances there is no basis to say that the predominant use of plaintiff's property by voluntary and recruited students, who must pay for the privilege in full, results in a dedication of the property to charitable purposes.

We are of the opinion, too, that the proof relating to the metamorphosis of the school from a profit to a nonprofit corporation makes it further evident that, basically and fundamentally, plaintiff does not partake of the characteristics of a charitable organization. The facts clearly show the predecessor corporation was strictly a business enterprise conducted with a view to pecuniary gain and that its profits and destinies were under the control of B. W. Cooke who, as president of the school, came to be the owner of all the stock and the holder of all the corporation's bonded indebtedness. Since reorganization as a nonprofit corporation there has been no change in method of operation, scope of instruction or fees charged during the period for which exemption is claimed and, as a practical matter, Cooke still retained complete control of the school's educational and financial affairs in his capacity as president of the school and as chairman of a board of trustees composed of employees and members of his family. The profits of the new corporation likewise continued to inure to the benefit of Cooke or his family, since they owned the outstanding bonds of the old corporation, for which plaintiff assumed liability, as well as all the bonds issued by the new corporation in an amount very nearly totalling the full value of plaintiff's assets, which the plaintiff is pledged by an indenture to punctually redeem at a cost of principal plus a substantial premium. In short the plaintiff is but an alter ego of the profit-making corporation. It is apparent, therefore, that the plaintiff remains primarily a business enterprise, rather than a charity, operated for the purpose of bringing maximum benefits to the Cooke family.

Moreover, it is not satisfactorily shown in this record that plaintiff performed any acts of charity, during the

years exemption is claimed, which would serve to change its primary purpose. Cooke testified on cross-examination that the school offered no scholarships; however, the general manager of the school stated that 225 scholarships had been set up prior to 1951 for orphaned children of World War II soldiers, and explained that only one had been availed of because most such orphans were still quite young. Even if we were to assume that a revocable offer of free tuition to some future students constitutes a present act of charity, the conflicting statements of plaintiff's officers on the subject and the limited information given with respect to the proposed scholarships do not establish a charitable purpose with the conclusiveness and clarity required when a claim is made for tax exemption. (See: *People ex rel. Fix* v. *Trustees of Northwestern College,* 322 Ill. 120; *People ex rel. McCullough* v. *Deutsche Gemeinde,* 249 Ill. 132.) The same may be said of plaintiff's reliance on a statement taken from school advertising literature to the effect that Coyne School had trained men with physical disabilities at no cost to themselves for tuition or sustenance. No direct proof of such claim was made in this proceeding. Nor is evidence that plaintiff expended approximately $5,000 for student welfare both in 1951 and 1952, conclusive proof that it was devoted to charity. For all that is shown in the record the benefits derived by the students from such expenditures may have been limited to increased recreation and social facilities. As opposed to the uncertainty of plaintiff's charitable activities, it appears clearly and conclusively that plaintiff's operation has remained the same whether for profit or not for profit. It charges substantial tuition fees which all its students, except the one who is enjoying a scholarship, must pay. Manifestly, therefore, the dispensation of charity is not the plaintiff's primary concern and its property is not used for or devoted to charitable purposes exclusively.

The decree of the circuit court of Cook County is affirmed.                    *Decree affirmed.*