(No. 34784.—

ROTARY INTERNATIONAL, Appellee, *vs.* HERBERT C. PASCHEN, County Treasurer, *et al.,* Appellants.

*Opinion filed September 18, 1958.*

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (ELROY S. SANDQUIST, JR., FRANCIS X. RILEY, and EDWARD J. HLADIS, of counsel,) for appellants.

DAVIS, DIETCH & RYAN, of Chicago, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The superior court of Cook County enjoined the treasurer and other county officials, defendants, from collecting the 1956 taxes on the property of Rotary International, an Illinois not-for-profit corporation, plaintiff, in the sum of $32,794.58, on the theory that plaintiff was a charitable corporation within the provisions of section 19(7) of the Revenue Act of 1939. (Ill. Rev. Stat. 1955, par. 500(7).) Since the public revenue is involved, defendants appealed directly to this court.

The property, located at 1600 Ridge Avenue, Evanston, was improved by a building, completed in 1954, having

approximately 48,000 square feet of floor space, and has since been used exclusively by plaintiff for administrative purposes.

The Rotary movement originated in Chicago in 1905, with one club having 4 members. On June 24, 1957, there were 9,493 clubs located in 102 countries, with a total of 447,500 members. Plaintiff was originally chartered as a not-for-profit corporation under the laws of this State on January 30, 1911, as the National Association of Rotary Clubs of America. Its corporate name was changed to International Association of Rotary Clubs on August 9, 1912, and finally to Rotary International on June 6, 1922. Its objects have also been amended from time to time. By resolution adopted May 30, 1951, the articles were amended to provide: "The object of Rotary is to encourage and foster the ideal of service as a basis of worthy enterprise and, in particular, to encourage and foster: 1. The development of acquaintance as an opportunity for service; 2. High ethical stands in business and professions; the recognition of the worthiness of all useful occupations; and the dignifying by each Rotarian of his occupation as an opportunity to serve society; 3. The application of the ideal of service by every Rotarian to his personal, business and community life; 4. The advancement of international understanding, good will, and peace through a world fellowship of business and professional men united in the ideal of service."

The director of plaintiff's executive services division testified that the corporation exists solely as the administrative and coordinating body of the various Rotary clubs; that the function of its central administration is to educate individual Rotary clubs as to the means by which they can perform better service, and to provide charitable benefits through the Rotary Foundation, which are beyond the scope of the individual club and are believed to be handled best on an international basis; that each individual club is autonomous and may adopt its own constitution provided

that the stated objects are consistent with those of Rotary International; that plaintiff furnishes individual clubs and members with literature and direct consultation when desired; that each club finances and sponsors civic projects within its own community; and that plaintiff makes no appropriation for financial assistance for any local project of the individual club. The evidence shows that there are 211 Rotary Clubs in Illinois with a total membership of 11,527; and that typical activities sponsored by these local organizations include the maintenance of a summer camp for children, the payment of living expenses for visiting students from abroad, the provision of funds for scholarships for nurses trained at local hospitals, for the erection of a college dormitory, for the cost of library service, for the therapeutic treatment of spastic and cerebral palsied children and for assistance in vocational guidance, as well as the transportation of crippled children. However, such projects also embrace the selection of a local queen and payment of her traveling expenses while on tour, the financing of a trip for members of a class of a local high school to certain eastern cities, the giving of annual awards to members of the local police force for marksmanship, the sending of birthday books to other clubs, and the sponsorship of a unique summer theatre.

The Rotary Foundation, which provides funds for scholarships, was established in 1938. Through contributions received from individual members a goal of $2,000,000 was reached in 1948. The report of plaintiff's secretary for 1956-57 shows that a total of $322,719 was contributed to the fund during the year and that the grand total of contributions to the foundation is $4,977,540. The report of the trustees concurrently presented, reflects total foundation assets of $2,677,799, consisting of cash and securities. The amount appropriated from the corpus of the fund for the year was $300,000, and from earned income, $87,364. In this fiscal year, 120 scholarships were granted. Each scholar-

ship enables a student from one country to pursue his studies in a foreign country for one year. Over 800 such scholarships were provided in the 10-year period from 1947 to 1957. During the 1953-54 fiscal year, 112 scholarships were granted to individuals from 33 countries. Of this number, 32 scholarship students from foreign countries came to the United States to study in a State other than Illinois, while 56 students from States other than Illinois were granted scholarships to study in foreign countries. Sixteen students from foreign countries studied in other foreign countries. Four Illinois students received scholarships to study abroad and a like number of foreign students attended institutions of higher learning in this State.

The foundation is administered on an international basis by the plaintiff's board of directors, and its funds, both cash and securities, are deposited with and held in trust by various banks in the United States and in foreign countries. On February 28, 1957, cash in the amount of $180,585 was on deposit in the United States, and the equivalent of $253,304 was on deposit in other countries. Foundation funds are not intermingled with the general funds and assets of plaintiff.

Plaintiff's principal source of operating income is from membership dues paid by individual members, designated as a "per capita tax." These payments are the obligation of each club and the secretary's report for 1956-57 reflects the termination of certain clubs for failure to make such payments. Plaintiff's budget for the fiscal year 1957-58, shows an estimated total annual income of $2,556,914, of which it was contemplated that $2,417,914 would be derived from *per capita* tax, and the balance from interest, registration fees, and the sale of publications and supplies. Plaintiff's publications are *The Rotarian,* printed in English, and the *Revista Rotaria,* in Spanish. During the fiscal year 1955-56, plaintiff realized a net income of $74,117 from *The Rotarian,* and reported a loss of $15,972 on

*Revista Rotaria.* In its budget for 1957-58, plaintiff antici-
pated a net income of $29,190 on *The Rotarian* and $5,710
on *Revista Rotaria.* In this budget the sum of $2,500 was
appropriated to cover excused payments of *per capita* tax
and other amounts debited to individual clubs. Plaintiff's
secretary reported a net income from all operations of
$231,562 for 1955-56, and an estimated net income of
$175,706 for 1956-57. The report sets forth in summary
the balance sheet of plaintiff, as of June 30, 1956, as
follows:

### ASSETS

| | |
|---|---:|
| Cash | $ 619,794. |
| Long-term Investments | 355,920. |
| R. I. Headquarters Property | 1,361,233. |
| Other Assets | 436,179. |
| Total | $2,773,126. |

### LIABILITIES AND SURPLUS

| | |
|---|---:|
| Liabilities and Deferred Income | $ 373,249. |
| Surplus | 2,399,877. |
| Total | $2,773,126. |

Plaintiff's treasurer, in his report, explained that the
above surplus, the largest in Rotary's history, represented
$1,361,233 invested in land and buildings, $994,582 in
cash, government bonds and other assets, and $44,062 re-
served in the headquarters building replacement fund; that
on February 28, 1957, plaintiff's total net cash was in
the sum of $1,489,744, exclusive of Rotary Foundation
cash in plaintiff's accounts and long-term investments of
$561,281; and that the surplus had been accumulated as
a result of a long-range policy adopted in 1930 with the
hope that it would eventually reach an amount equal to
plaintiff's annual operating expenses, which for 1956-57
was in the sum of $3,359,487.

In 1956-57, plaintiff's extensive operations were super-
vised by a president, 3 vice-presidents, a secretary, a treas-

urer, and 10 directors. In that year 8 of the group were residents of the United States and 8 were from foreign countries. The secretary is a full-time, paid employee. The other officers receive no remuneration designated as salary except for the treasurer who receives $1 per year. The budget for 1957-58, however, appropriated for the president a total of $42,600 of which $17,600 was for office, $15,000 for travelling expense not otherwise provided for, and $10,000 designated as "president's memento."

The testimony reveals that approximately 165 persons are employed at the headquarters in Evanston in connection with the actual administration of plaintiff's business. One department of 20 persons contacts individual clubs in the United States and Canada and provides them with ideas and suggestions for service activities in their communities. Another department of 8 persons performs the same service for clubs in Latin America and a third renders such assistance to clubs in the Eastern hemisphere. There is also a department which writes material designed to encourage individual clubs to undertake different activities.

Plaintiff's claim of exemption is made under the provisions of section 19(7) of the Revenue Act of 1939 which provides that "All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States * * * when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit" shall be exempt from taxation. (Ill. Rev. Stat. 1955, chap. 120, par. 500(7).) Statutes exempting property from taxation must be strictly construed and cannot be extended by judicial interpretation. (*Coyne Electrical School* v. *Paschen*, 12 Ill.2d 387; *Rogers Park Post No. 108* v. *Brenza*, 8 Ill.2d 286; *People ex rel. Brenza* v. *Turnverein Lincoln*, 8 Ill.2d 198; *International College of Surgeons* v. *Brenza*, 8 Ill.2d 141; *People ex rel. Cannon* v.

*Southern Illinois Hospital Corp.* 404 Ill. 66.) In determining whether property is included within the scope of a tax exemption all facts are to be construed and all debatable questions resolved in favor of taxation. Every presumption is against the intention of the State to exempt property from taxation. It is, therefore, incumbent upon the plaintiff to show clearly that its organization and the use of its property come within the provisions of the statute and section 3 of article IX of the constitution of the State, as charitable. (*Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286, 290-91.) The burden of sustaining the right to exemption rests upon the party seeking it. He must show clearly that the specific property for which exemption is claimed is within the contemplation of the law. (*Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387; *Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286; *International College of Surgeons* v. *Brenza,* 8 Ill.2d 141; *People ex rel. Nelson* v. *Rockford Lodge B.P.O.E.* 348 Ill. 528; *People ex rel. Baldwin* v. *Jessamine Withers Home,* 312 Ill. 136.) Each individual case must necessarily be determined from the facts presented. (*People ex rel. Cannon* v. *Southern Illinois Hospital Corp.* 404 Ill. 66; *People ex rel. Goodman* v. *University of Illinois Foundation,* 388 Ill. 363.) To sustain a claim of exemption under the statute the evidence must establish, first, that the property is owned by a charitable organization, and second, that it is exclusively used for charitable purposes and not leased or otherwise used with a view to profit. (*Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387; *Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286; *People ex rel. Nelson* v. *Rockford Lodge, B.P.O.E.* 348 Ill. 528.) Defendants contend that the plaintiff has proved neither of these propositions.

We have held that the distinctive characteristics of a charitable organization are that it has no capital, capital stock or shareholders, earns no profits and pays no dividends, but rather derives its funds mainly from public and

private charity and holds them in trust for the objects and purposes expressed in its charter. (*People ex rel. Cannon* v. *Southern Illinois Hospital Corp.* 404 Ill. 66; *People ex rel. Hellyer* v. *Morton,* 373 Ill. 72; *Congregational Sunday School and Publishing Society* v. *Board of Review,* 290 Ill. 108.) From the foregoing facts it clearly appears that plaintiff's income is not derived from public or private charity, but from *per capita* tax payments, interest on investments, fees, and the sale of publications and supplies; and that out of a total estimated income of $2,556,914 for the fiscal year 1957-58, it is estimated that $2,417,914 would be received from *per capita* tax. These payments are the established obligation of each club and are neither gratuities nor gifts. In event of failure to pay such tax, the membership of the individual club can be and, according to the secretary's report on fiscal policy, frequently is terminated. The improbability that payment of the *per capita* tax will be excused is shown by the fact that out of a total budget of $2,556,914 for 1957-58, only $2,500 was appropriated to defray excused payments of *per capita* tax and other obligations of the individual clubs.

In determining whether an organization is charitable in purpose, it is proper to consider the provisions of its charter. (*Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286; *People ex rel. Nelson* v. *Rockford Masonic Temple Building Ass'n,* 348 Ill. 567.) "The object of Rotary is to encourage and foster the ideal of service as a basis of worthy enterprise" in the respects specified in its charter. While its aims are commendable, they are not charitable under the law. There is nothing in its objects which requires plaintiff to devote its funds or income to purposes deemed charitable in law. An organization is charitable only when it exists to carry out a purpose recognized in law as charitable, and the law recognizes as charitable only those purposes which, if carried out, will benefit the public in such a way that there is a consequent relief, to some

extent, of the burden upon the State to care for and advance the interests of its citizens. This is the fundamental ground upon which all exemptions in favor of charitable institutions are based. (*Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387; *International College of Surgeons* v. *Brenza,* 8 Ill.2d 141; *People ex rel. Hellyer* v. *Morton,* 373 Ill. 72.) We find nothing in plaintiff's charter which requires it to devote its funds to purposes which will necessarily relieve, even to a slight extent, the burden upon the State. An act of service may or may not be charitable. Thus, the selection of a local queen and the payment of her expenses while on tour and the financing of a trip by high school students may properly be considered a service, but such acts are certainly not charitable in contemplation of the law. It is firmly established in this State that the objects of a not-for-profit corporation may be commendable, yet not charitable under the law. *Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387; *C. O. Baptista Films* v. *Cummins,* 9 Ill.2d. 259; *Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286; *People ex rel. Brenza* v. *Turnverein Lincoln,* 8 Ill.2d 198; *International College of Surgeons* v. *Brenza,* 8 Ill.2d. 141; *In re Estate of Schureman,* 8 Ill.2d 125; *People ex rel. Cannon* v. *Southern Illinois Hospital Corp.* 404 Ill. 66; *People ex rel. Nelson* v. *Rockford Masonic Temple Building Ass'n,* 348 Ill. 567; *People ex rel. Nelson* v. *Rockford Lodge B.P.O.E.* 348 Ill. 528.

While plaintiff claims credit for the charitable activities of the local clubs, the salient fact remains that it contributes none of its funds or income to those endeavors. Such activities are sponsored and financed by the local clubs independent of plaintiff's tangible assistance. Plaintiff acknowledges this and asserts that its function is to educate and guide the local clubs. In such event plaintiff is contributing only incidentally to the activities of the local clubs, and not in such manner as to render it, in legal contemplation, a charitable organization, even though some of

the activities of the local clubs may in themselves be charitable in nature. The fact that a not-for-profit corporation furnishes advice or inspiration to those actually engaged in a charitable endeavor does not render its activity charitable. In order to qualify property for exemption from taxation, the benefits must accrue to mankind directly and it is not enough that incidental benefits may come to the public as a result of its use. *Coyne Electrical School* v. *Paschen*, 12 Ill.2d 387.

Plaintiff has a surplus of over $2,000,000 and there is no evidence that it intends to use any of this fund for charity. While we are not critical of plaintiff's fiscal policy, we cannot but comment that it is hardly consistent with the claim that it is a charitable organization. The evidence fails to reflect that plaintiff either receives or uses its general funds in such manner as to be deemed in law a charitable organization.

There remains for consideration, however, the status of the Rotary Foundation and plaintiff's activities in connection therewith. The Foundation is primarily an international scholarship fund. While the testimony shows that the fund is administered by the officers of the plaintiff, there is no evidence concerning the extent to which the property is actually used for this purpose or the number of employees, if any, actually engaged in the work of administering the fund. The assets of the fund are held in the name of a board of trustees and the greater portion thereof are deposited in banks of foreign countries. Certainly, there is insufficient evidence to establish that the property is exclusively devoted to the administration of the affairs of the Rotary Foundation. The testimony of its extensive use in connection with plaintiff's other activities negates such conclusion. Even if we assume that plaintiff's activities in connection with the Rotary Foundation are charitable under the law, plaintiff's claim of exemption must fail because of its failure to demonstrate that its

property is used exclusively for such charitable purpose. We can only conclude from the evidence that plaintiff's use of the property for the administration of the Rotary Foundation funds is incidental, and accordingly, its property is not exempt from taxation.

The decree of the superior court is reversed and the cause is remanded, with directions to dissolve the injunction restraining the collection of taxes.

*Reversed and remanded, with directions.*