(No. 36477.—)

KIWANIS INTERNATIONAL, Appellant, *vs.* FRANCIS S. LORENZ, County Treasurer *et al.,* Appellees.

*Opinion filed September 22, 1961.*

GREGORY and HUNTER, of Chicago, (ROBERT L. HUNTER, of counsel,) for appellant.

DANIEL P. WARD, State's Attorney, of Chicago, (EDWARD J. HLADIS, Assistant State's Attorney, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an action by Kiwanis International, an Illinois not-for-profit corporation, to enjoin officials of Cook County from taking steps to collect the 1958 and 1959 taxes

on the corporation's real property at 101 East Erie Street, Chicago. After a hearing the superior court of Cook County dismissed the complaint for want of equity. The revenue is involved, and the case was appealed directly to this court.

The question is whether the property is exempt from taxation under sections 19 and 19.7 of the Revenue Act of 1939. (Ill. Rev. Stat. 1959, chap. 120, pars. 500, 500.7.) These sections provide for the exemption of "all property of beneficent and charitable organizations * * * when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit; * * *." The property in question is improved with a building which is the main office of the corporation and there is no suggestion that it is "leased or otherwise used with a view to profit."

Kiwanis International is concerned with the affairs of the 4,753 individual Kiwanis clubs in the United States and abroad. It was organized in 1918 and its charter was amended to adopt its present name and corporate purposes in 1930.

The original charter provided that the purposes of the corporation should be:

"1. To standardize and disseminate Kiwanian principles of fair dealing and practices and the observance of the Golden Rule.

2. To encourage, promote and supervise the organization of Kiwanis Clubs.

3. To study the work of the existing Kiwanis Clubs and their value to members and communities.

4. To promote the spirit of fraternalism among members and clubs.

5. To discuss and study the Science of business building.

6. To promote and encourage the living of the Golden Rule in private, civic, social and business life."

A new set of purposes was adopted at a convention in 1924, and in 1930 the charter was amended accordingly to enumerate the following purposes;

"1. To give primacy to the human and spiritual, rather than to the material values of life.

2. To encourage the daily living of the Golden Rule in all human relationships.

3. To promote the adoption and the application of higher social, business, and professional standards.

4. To develop, by precept and example, a more intelligent, aggressive, and serviceable citizenship.

5. To provide through Kiwanis Clubs, a practical means to form enduring friendships, render altruistic service, and to build better communities.

6. To cooperate in creating and maintaining sound public opinion and high idealism to make possible the increase of righteousness, justice, patriotism, and good will."

The 1930 amendment also provided that the corporation should have power:

"1. To direct, manage, and supervise the business and funds of Kiwanis International.

2. To create, supervise, and control chartered clubs and districts."

These powers and purposes have remained unchanged since 1930.

The following aspects of the relationship between the corporation and the individual clubs appear from the record. Clubs become affiliated with the corporation, which has its office at 101 E. Erie Street, when it issues them a charter. The charter holders are entitled to send delegates to the national convention which elects the corporation's officers and directors, and they are obliged to forward a part of their dues for the support of the corporation office. Members of the individual clubs make up the membership of various committees which meet at the office of the corporation. None of the individual club charters was introduced in evidence, but the witness Frederick M. Barnes, assistant secretary of Kiwanis International, assented to the suggestion of the State's Attorney that "within the general area of the constitution of the Kiwanis International, the local clubs are free to perform any services or conduct any

activities that they see fit." When asked whether any clubs were required by the corporation to perform any specific charitable programs, he said that "they do it actually without that as a requirement."

The record is not entirely clear about the financial relationships between the corporation and the local clubs. Barnes testified that he did not know what the budget of Kiwanis International was because "it is not the office that is located at 101 East Erie Street but rather the whole aggregate of 4,753 clubs." Both in the trial court and in this court it was said that "Kiwanis International is the local clubs and the local clubs are Kiwanis International." All that appears with certainty is that the "office" of the corporation keeps a reserve of about $290,000 on hand.

The local clubs carry on, or at least contribute to, a wide variety of charitable, religious and educational activities. They carry on programs designed to stimulate attendance at church, sponsor Boy Scout and Girl Scout troops, engage in highway safety programs, conduct vocational guidance clinics, sponsor boys clubs, conduct summer camps, and carry on other similar activities.

The local clubs meet weekly, at lunch or dinner, the aim of these meetings being "to enable the men to get sufficiently well acquainted so that they are prepared to engage in community activities." Barnes's opinion was that the purpose of a majority of the members in joining the club was to enjoy "the fellowship of meeting with other business and professional men," and to have "the opportunity of joining other men in community projects." In his opinion, however, "the promotion of fraternalism" was an "incidental benefit," and not a main purpose. "Kiwanis in Brief," a small pamphlet published by the organization, describes Kiwanis as "an aggressive, constructive service club," committed to the service of the community, "encouraging friendship, and development of leadership. * * * It

capitalizes on the personal fellowship that is engendered by a group of men meeting together every week." As benefits of membership it lists:

"An opportunity to associate with outstanding representatives of the business, professional, agricultural, and institutional life of a community, in an atmosphere of friendliness, mutual helpfulness, and service.

"An opportunity for joint as well as individual participation in many activities for the service of humanity and for community betterment.

"An opportunity for self-expression. Mute men become trumpet toned through Kiwanis.

"An opportunity for self-development. Through the quickening influences of the club fellowship and the fulfillment of responsibilities men increase their personal ability as community leaders."

The activities that take place at 101 E. Erie Street, the property in question, have to do with problems common to all the clubs. Barnes testified that the space in the building is used for offices and conference rooms where Kiwanis committees meet. "We have no club rooms. We have no social programs," he said. Although the Kiwanis programs are conducted by the clubs and are not the direct responsibility of personnel at 101 East Erie, local experience of the clubs is channeled to all other clubs through the main office.

*Rotary International* v. *Paschen,* 14 Ill.2d 480, involved a claim of tax exemption under circumstances similar to those now before us. We there said: "Statutes exempting property from taxation must be strictly construed and can not be extended by judicial interpretation. * * * In determining whether property is included within the scope of a tax exemption all facts are to be construed and all debatable questions resolved in favor of taxation. * * * The burden of sustaining the right of exemption rests upon the party seeking it. He must show clearly that the specific property for which exemption is claimed is within the contemplation of the law. (*Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387; *Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d

286; *International College of Surgeons* v. *Brenza,* 8 Ill.2d 141; *People ex rel. Nelson* v. *Rockford Lodge B.P.O.E.* 348 Ill. 528; *People ex rel. Baldwin* v. *Jessamine Withers Home,* 312 Ill. 136.)" 14 Ill.2d at 486-7.

In this case, as in *Rotary International,* we are of the opinion that the burden of establishing the right to a tax exemption has not been sustained. Many portions of the statement of purposes of Kiwanis International, formulated as they are in highly abstract terms, are not of much assistance in determining the issue before us. The record, however, shows that Kiwanis International is the central agency of some 4,700 clubs which meet weekly, formed by business and professional men "for exchanging experience," for "fellowship" and "to improve their leadership in the community." Plaintiff's original articles of incorporation included among its objects: "To promote the spirit of fraternalism among members and clubs," and "To discuss and study the Science of business building" and its amended articles: "To provide through Kiwanis Clubs, a practical means to form enduring friendships, * * *." Although the formal statement of purposes was rewritten in 1930, the record does not suggest that any substantial change took place in the activities of the organization.

While the purposes of Kiwanis International are laudable, and many of the activities of the local clubs are charitable, it has other important purposes,—the social, professional and business advancement of the members. In this respect Kiwanis International is like Rotary International, the American Legion, the International College of Surgeons, and the American Medical Association. (*Rotary International* v. *Paschen,* 14 Ill.2d 480; *Rogers Park Post* v. *Brenza,* 8 Ill.2d 286; *International College of Surgeons* v. *Brenza,* 8 Ill.2d 141; *American Medical Assn.* v. *Board of Review,* 392 Ill. 614.) Each of these organizations does philanthropic work of public value but each of them also contains the element of personal advantage to their mem-

bers, an element which was lacking in *Association of American Medical Colleges* v. *Lorenz,* 17 Ill.2d 125.

The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*