ILLINOIS HOSPITAL & HEALTH SERVICE, INC., Plaintiff-Appellee, *v.* DOUGLAS R. AURAND, Winnebago County Treasurer and County Collector, Defendant-Appellant.

Second District   No. 76-576

Opinion filed February 9, 1978.—Rehearing denied April 7, 1978.

Daniel D. Doyle, State's Attorney, of Rockford (William H. Gates, Assistant State's Attorney, of counsel), for appellant.

Francis E. Hickey, Peter DeBruyne, and Thomas D. Luchetti, all of Rockford, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

Illinois Hospital and Health Service, Inc., a not-for-profit corporation (hereinafter referred to as the "corporation"), brought this action to enjoin the Winnebago County Treasurer from collecting real estate taxes for 1974 and future years. At this point it is to be observed that the corporation is, in effect, the Rockford Blue Cross. The real estate involved is, apparently, the office building located at 227 N. Wyman Street in Rockford. In the testimony, exhibits and briefs of the parties the corporation is variously described as "Rockford Blue Cross" or "Illinois Hospital and Health Service, Inc." After a hearing on the amended petition the court issued a permanent injunction against the defendant

from collecting real estate taxes for 1974 and future years. Douglas R. Aurand, the Winnebago County treasurer (hereinafter referred to as the "County Treasurer") appeals.

The issues presented are: (1) whether the corporation is a charitable and benevolent organization within the meaning of the pertinent statutory provisions and the constitution of the State of Illinois; (2) whether section 27 of the Voluntary Health Services Plans Act (Ill. Rev. Stat. 1975, ch. 32, par. 621) is an unconstitutional usurpation of a function of the judiciary; (3) whether the corporation, after appearing before the Board of Review of Winnebago County and protesting the denial of its exemption and return to the tax rolls, should have pursued its administrative remedies by an appeal under the Administrative Review Act and whether that remedy was exclusive; and (4) whether the trial court erred in considering the county court order of May 28, 1963, enjoining the collection of personal property taxes for 1962 and subsequent years.

The corporation was initially organized as a non-profit Hospital Service Corporation (Ill. Rev. Stat. 1935, ch. 32, par. 551 *et seq.*) in 1939, but received a new charter under the Voluntary Health Services Plans Act (Ill. Rev. Stat. 1961, ch. 32, par. 595 *et seq.*) in 1961. It enjoyed a real estate tax exemption under the provisions of the *latter* act until 1974. The property tax division of the State of Illinois has exempted the subject property and the personal property of the corporation from payment of taxes and has continued that exemption. The U.S. Treasury Department, likewise, has exempted the corporation from income taxes. Certificates of status of exempt property were filed for the years 1973 through 1976 by the corporation.

Gerald Simonds, the Rockford Township assessor, testified that sometime during the summer of 1974 he discovered that the corporation was tax exempt. He further testified that he had sold insurance and had lost a group policy to Blue Cross and determined that the property should be returned to the tax rolls. On October 30, 1974, the Board of Review notified the corporation that the real estate had been returned to the tax rolls and that if it wanted a hearing to contact the Board of Review of Winnebago County. On November 5, 1974, the corporation requested a hearing before the Board of Review and that hearing was held on November 20, 1974. On March 12, 1975, the Board of Review advised the corporation that the Board had made a final decision that the real estate be assessed for real estate taxes for the year 1974. Thereafter, taxes were assessed for the year 1974.

In the case before us we are faced with the consideration of article IX, section 6 of the Illinois Constitution of 1970, which states:

"The General Assembly by law may exempt from taxation only the property of the State, units of local government and school

districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. The General Assembly by law may grant homestead exemptions or rent credits"

and the application of that constitutional provision to section 27 of the Voluntary Health Services Plans Act (Ill. Rev. Stat. 1975, ch. 32, par. 621), which reads:

"Health services plan corporations organized under this Act shall be operated and conducted not-for-profit and shall be governed by the provisions of the 'General Not for Profit Corporation Act', approved July 17, 1943, as amended, to such extent as the same may be applicable and not inconsistent with this Act. Every corporation organized hereunder is declared to be a charitable and benevolent corporation, and all of its funds and property shall be exempt from every State, county, district, municipal and school tax or assessment, and all other taxes and license fees, from the payment of which charitable and benevolent corporations or institutions are now or may hereafter be exempt." Ill. Rev. Stat. 1975, ch. 32, par. 621.

The trial court, in enjoining the collection of the real estate taxes herein, in a memorandum opinion, relied upon *Rotary International v. Paschen* (1958), 14 Ill. 2d 480, 153 N.E.2d 4, and in so doing found that the legislature determined that such an organization or association was organized for charitable purposes as it would, to some extent, relieve the burden of the State in caring for and advancing the interests of its citizens. *Rotary International* involved only the construction and application of the provisions of section 19 of the Revenue Act of 1939 (Ill. Rev. Stat. 1955, ch. 120, par. 500(7)), in which the legislature declared all property of institutions of public charity, including old people's homes when operated under the auspices of a religious, fraternal, charitable or other nonprofit organization, is exempt from taxation. The Rotary International case involved the taxation of property located in Evanston which was the headquarters of Rotary International. The court found that the various clubs belonging to Rotary International were in fact engaged in many charitable endeavors. However, in substance, the court determined that the Rotary International building must be actually and exclusively used for charitable or beneficent purposes and that, "It is, therefore, incumbent upon the plaintiff to show clearly that its organization and the use of its property come within the provisions of the statute and section 3 of article IX of the [1870] constitution of the State, as charitable." (*Rotary International,* 14 Ill. 2d 480, 487, 153 N.E.2d 4, 8.) The court determined that its income was not derived from public or private charity in any way but from per capita assessments on the individual members and interest

on investments, fees and sale of publications and supplies. The court further stated that in determining whether an organization was charitable or not that it was proper to consider the provision of its charter, concluding that:

> "We find nothing in plaintiff's charter which requires it to devote its funds to purposes which will necessarily relieve, even to a slight extent, the burden upon the State." (14 Ill. 2d 480, 489, 153 N.E.2d 4, 9.)

The court thereupon reversed the trial court's injunction restraining the collection of taxes on the real estate in question. We do not find that *Rotary International* supports the finding of the trial court herein.

■■ It can readily be seen that with the exception of the named exemptions in article IX, section 6, of the Illinois Constitution, we are limited to those properties used for "charitable purposes." The legislature has, by statute, specifically provided that an organization such as the not-for-profit corporation herein, is declared to be a charitable and benevolent corporation. The County Treasurer argues that the legislature in exempting such organizations is usurping the function of the judiciary. The corporation's main argument is that the legislature may determine what is a charitable and benevolent corporation and that it is not for the judiciary to rewrite legislation. We do not agree. It has been repeatedly held that regardless of what the legislature declares to be exempt by statute, the courts of this state are empowered to determine whether an organization is a charitable organization within the meaning of the above quoted constitutional provision. In *Small v. Pangle* (1975), 60 Ill. 2d 510, 516, 328 N.E.2d 285, 288, our supreme court stated:

> "We reiterated that the association must further comply unequivocally with the constitutional requirement of exclusive charitable use and that that determination is a judicial function, which may not be usurped by the legislature."

See also *People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 237 N.E.2d 533; *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 230 N.E.2d 846; *Locust Grove Cemetery Association v. Rose* (1959), 16 Ill. 2d 132, 156 N.E.2d 577.

In further support of its contention as to tax exemption, the corporation has cited *Associated Hospital Service Inc. v. City of Milwaukee* (1961), 13 Wis. 2d 447, 109 N.W.2d 271; and *Cleveland Hospital Service Association v. Ebright* (Ohio App. 1942), 36 Ohio L. Abs. 600, 45 N.E.2d 157, aff'd (1943), 142 Ohio St. 51, 26 Ohio Op. 256, 49 N.E.2d 929.

In *Associated Hospital Service*, we find an excellent summary of the history of legislation in various states relating to the exemption of Blue Cross property. It appears that the Blue Cross movement originated in the plan of Baylor University Hospital in Dallas, Texas, in 1929. The

experiment was successful and spread to other states. Enabling legislation was enacted by the New York Legislature in 1934. The American Hospital Association was instrumental in promoting such Blue Cross enabling acts. Its Council on Hospital Service Plans drafted and distributed a model enabling act which was subsequently adopted by a considerable number of states, and was adopted in Illinois in 1935. The provision for tax exempt status in the model act was substantially the same as such provision found in section 27 of our Voluntary Health Services Plans Act, to-wit:

> "Every corporation subject to the provisions of this act is hereby declared to be a charitable and benevolent institution, and its funds, operations and properties shall be exempt from taxation." 13 Wis. 447, 455, 109 N.W.2d 271, 275.

The Wisconsin Supreme Court found that there was no constitutional limitation upon the legislature in exempting such non-profit hospital service plan as a "charitable and benevolent institution" and went on to state that,

> "The legislature, if it had seen fit to do so, simply could have granted tax exemption to the property of non-profit hospital service corporations without labeling them as 'charitable and benevolent.' " 13 Wis. 447, 462, 109 N.W.2d 271, 278.

Likewise in *Cleveland Hospital Service Ass'n v. Ebright* (1943), 142 Ohio St. 51, 55-56, 49 N.E.2d 929, 931, the Supreme Court of Ohio stated:

> "The state has the undoubted authority to determine the manner in which domestic corporations shall be taxed and, if it chooses, it may relieve some corporations from certain taxes which corporations of a different character are required to pay, or substitute a different form of taxation, provided, however, such method of taxation is in accordance with the provisions of the Constitution."

Finding no constitutional limitation upon the legislature in exempting the voluntary hospital corporations, the Ohio Supreme Court upheld the tax exemption.

These two cases are not applicable or controlling in the instant case. As we have stated, the Illinois constitutional limitation is found in article IX, section 6 and a similar constitutional limitation was not an issue in either the Wisconsin or Ohio cases.

We turn then to the record as to what evidence was presented herein as to the charitable nature of the corporation. The following colloquy is found:

> "Q Now, the funds of the corporation are strictly derived from premiums and either the group insurance or individuals pay these premiums.
> A That's right.

Q Have you ever insured any individual without securing any premiums?

MR. HICKEY: That's objected to. Do you mean, Bill, by the subscriber paying the premiums?

MR. GATES: I am trying to—they are a charitable institution and all their property is exempt. I want to find out what charitable charity they dispense, if any, to the public.

THE COURT: I'll overrule the objection.

A Not to my knowledge.

Q Have you ever insured any group or issued any group insurance where they did not pay the premiums?

A We may run into a delinquent—

Q Answer yes or no.

A No, we have not.

Q Now, those individuals which pay premiums for insurance coverage, if they become destitute and cannot pay the premiums, do you keep on insuring them?

MR. HICKEY: Objection, Your Honor.

THE COURT: I'll overrule that objection.

A No, we do not.

Q If they did not pay the premium, you would cancel their insurance policy, is that right?

A If the group does not pay and the bulk of our business is written on a group basis, the individual within that group is given the opportunity of continuing by paying direct to the office. There has been some cases where a company has decided to terminate.

Q I assume the answer is no.

A Well, what I am saying, we don't cancel them out without giving them the opportunity to continue.

Q But to continue, a premium has to be paid to the corporation.

A That's right.

Q And any individual, if they do not pay the premium, you cancel their insurance out. Any individual who cannot pay the premium, you cancel their premiums out.

A That's correct.

Q Can you cite any instances to this Court where the corporation has performed any charitable acts?

MR. HICKEY: I am going to object to that. What is a charitable act? That's why I object to it.

MR. GATES: They don't do anything for free, I think we have established that.

MR. HICKEY: If you are referring to like the Community Chest—is that what you are saying?

MR. GATES: No, that's not what I am saying. I want to know what they do, if they carry them as destitute people.

THE COURT: I think the record shows that does not happen. You cancel their insurance, right?

A That's correct, sir."

It can thus be seen that this corporation, laudable and desirable as it may be, is for the benefit of those members who make their payments. If they do not pay they are dropped from the rolls. No provision is found under this plan whereby any charity is dispensed to those members who do not pay, or to any destitute member of society in general.

■■ As in *Paschen*, we have examined the charter of the corporation here as a means of determining whether or not the corporation is, in fact, charitable in purpose. We find nothing in the charter which would so indicate. The purpose of this corporation is to operate a voluntary health services plan. It has repeatedly been stated that the burden of proving the right to exemption is upon the party seeking exemption and all debatable questions are resolved in favor of taxation. (*People ex rel. Nordland v. Home for the Aged; Kiwanis International v. Lorenz* (1961), 23 Ill. 2d 141, 177 N.E.2d 220; *People v. Young Men's Christian Association* (1936), 365 Ill. 118, 6 N.E.2d 166.) The corporation contends that inasmuch as the charter provides that upon possible dissolution any surplus shall be donated to a charitable, benevolent or educational organization that this is an indicia of the charitable nature of the corporation. We find that alone to be insufficient evidence of a charitable purpose.

■■ The corporation herein was organized and came within the applicable statute relating to its organization. In order to be entitled to tax exemption, however, a corporation must comply with the constitutional requirement of "charitable purposes." Such a determination must be made from the facts presented. (*Methodist Old People's Home v. Korzen* (1968), 39 Ill. 2d 149, 156, 233 N.E.2d 537, 541; *People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 370, 58 N.E.2d 33, 37.) Additionally, the ordinary charitable corporation, in addition to not having capital, capital stock or shareholders, and not earning profits or dividends, ordinarily derives its funds from public and private charity. The mere fact that an organization may charge those able to pay for the use of facilities or services of the corporation does not make such an organization "non charitable" where it does furnish such facilities or services to those unable to pay. See *People v. Y.M.C.A.; Sisters of the Third Order of St. Francis v. Board of Review* (1907), 231 Ill. 317, 83 N.E. 272.

From an examination of the record we find no evidence that the corporation herein is organized for, or operated under, a charitable purpose as defined in article IX, section 6 of the 1970 Illinois Constitution.

We further find no authority for the legislature to exempt a non-for-profit corporation organized under the Voluntary Health Services Plans Act unless the same is an operation for charitable purposes as required in article IX, section 6 of the Illinois Constitution.

■■ For the reasons stated above, we hold that the plaintiff's property herein is not used for charitable purposes within the meaning of article IX, section 6 of the Illinois Constitution and is therefore not entitled to exemption from tax, notwithstanding the provisions of the Voluntary Health Services Plans Act. In view of our decision herein it is unnecessary to consider the other contentions of the appellant, County Treasurer. The order of the trial court herein is reversed and the cause is remanded, with directions to dissolve the injunction restraining the collection of taxes.

Reversed and remanded with directions.

WOODWARD and RECHENMACHER, JJ., concur.