**Gil PETERSON d/b/a Movietime Video, Appellant,**

v.

**NCNB TEXAS NATIONAL BANK, Appellee.**

No. 05–91–00868–CV.

Court of Appeals of Texas, Dallas.

July 7, 1992.

Rehearing Denied Aug. 25, 1992.

---

**264**

Cecil R. Miskin, Arlington, for appellant.

J. Hamilton Rial, III, Dallas, for appellee.

Before LAGARDE, KINKEADE and WIGGINS, JJ.

## OPINION

WIGGINS, Justice.

Gil Peterson d/b/a Movietime Video appeals the trial court's summary judgment in favor of NCNB Texas National Bank. In two points of error, Peterson argues that the trial court erred when it held that his actions constituted affirmance of a lease assumed by NCNB following a foreclosure. We overrule his points of error and affirm the trial court's judgment.

## BACKGROUND

Peterson leased commercial property from James E. Strode Company. On May 3, 1988, NCNB foreclosed on Strode's property pursuant to a deed of trust lien created prior to the lease. After the foreclosure, NCNB sent Peterson a letter, dated May 10, 1988, informing him that it was the new owner of the shopping center. The letter stated, "The Bank is pleased to have you as a tenant.... Please arrange for all payments made by you *pursuant to the lease* to be made by check payable to [NCNB]." [1] [Emphasis added.] Peterson made regular rental payments of $1790 to NCNB on May 27 and June 24 in response to the May 10 letter. On July 8, 1988, NCNB sent Peterson a second letter, informing Peterson that it was the new landlord and that P. O'B. Montgomery was the manager of the shopping center. NCNB expressly affirmed the lease in this correspondence and enclosed a "confirmation of lease" certificate, which it requested Peterson to execute. Thereafter, Peterson made two more payments of $1790 on July 22 and August 29. Peterson, however, never returned executed copies of the lease-confirmation agreement. During the months of September, October, and November, Peterson tendered rental payments of only $895 per month.

NCNB then filed suit against Peterson seeking all sums due under the lease. Peterson moved for summary judgment, claiming that because the lease postdated the deed of trust lien under which NCNB

---

1. The letter requested that payment be made to First RepublicBank Dallas, National Associa- tion, predecessor in interest to NCNB.

acquired the premises, the foreclosure extinguished the lease and Peterson's liability. Peterson claimed that he did not consent to the continuation of the lease and that payment of rentals alone was insufficient to affirm the lease. NCNB filed a cross-motion for summary judgment, contending that Peterson affirmed the lease based upon his payment of rent for four months subsequent to the foreclosure. Both parties attempted to submit the cause to the trial court upon an agreed stipulation of facts and submission of agreed case pursuant to rule 263 of the Texas Rules of Civil Procedure. The parties, however, did not comply with rule 263. The trial court entered judgment in favor of NCNB.

### DISCUSSION

In his first point of error, Peterson contends that the trial court erred, as a matter of law, in entering judgment that the payment of rent to a foreclosure sale purchaser alone constituted "sufficient actions" to affirm the lease and to bind him contractually on the lease. In his second point of error, Peterson contends that the trial court erred in finding that there was sufficient evidence, as a matter of law, in the stipulated facts to show that he had affirmed the lease and was liable to NCNB for the balance of the lease. Because these points of error involve the same facts and the same law, we discuss them together.

■ Initially, we note that the parties have stipulated the facts they deem material to their controversy. They submitted both motions for summary judgment and a document titled "Rule 263 Submission of Agreed Case." The trial court, however, did not certify the stipulations. Moreover, it is clear from the record the trial court considered matters other than the stipulations in rendering its judgment. Accordingly, we hold the stipulations did not amount to submission of an agreed case under Texas Rule of Civil Procedure 263. *Farah v. First Nat'l Bank of Fort Worth,* 624 S.W.2d 341, 345 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.).

Since the parties did not comply with rule 263, we will review this case under the standards for summary judgment.

#### 1. Standard of Review— Summary Judgment

A trial court may render summary judgment only if the pleadings, depositions, admissions, and affidavits show (1) there is no genuine issue as to any material fact and (2) the moving party is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 412 (Tex.1989). The purpose of the summary judgment rule is to eliminate patently unmeritorious claims or untenable defenses. The rule is not meant to deprive the litigants of their right to a full hearing on the merits of any real fact issue. *See Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

In reviewing a trial court's grant of a summary judgment, we apply the following standards:

(1) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) in deciding whether there is a disputed material fact issue precluding summary judgment, we must take evidence favorable to the nonmovant as true; and

(3) we must indulge every reasonable inference in favor of the nonmovant and resolve any facts in its favor.

*See Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

A movant must show his entitlement to summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law. *See Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). The movant meets this burden if he produces evidence that is sufficient to support an instructed verdict at trial. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). The movant is under no obligation to negate affirmative defenses. The pleading of an affirmative defense does not alone defeat a motion for summary judg-

ment by a movant whose proof conclusively establishes his right to an instructed verdict. The opposing party must come forward with evidence sufficient to raise a fact issue with respect to each element of the defense to avoid summary judgment. *See id.*

### 2. Lease Affirmation

██ At trial, the parties agreed that this case is controlled by *United General Insurance Agency of Midland, Inc. v. American National Insurance Co.*, 740 S.W.2d 885 (Tex.App.—El Paso 1987, no writ). In *United General*, the court held that the continued possession by a tenant, without more, does not establish an agreement to pay rent on the rental contract. *Id.* at 886. The court also noted, however, that any payment of rent made and accepted would have impliedly bound the lessee to the lease.[2] *Id.*

Similarly, in *Peck & Hills Furniture Co. v. Long*, 68 S.W.2d 288 (Tex.Civ.App.—Fort Worth 1934, no writ), the court held that the foreclosure sale gave the purchaser the right to either terminate the lease or to continue it in force with the tenant's consent. If the purchaser and the lessee elected to treat the lease as still subsisting, subsequent to the foreclosure, and the lessee paid rent with full knowledge of the foreclosure sale and in accordance with the terms of the original lease, then there was an implied agreement for a continuation of the original lease. *Id.* at 289. This ratification process is reciprocal. In *Ontiveros v. MBank Houston, N.A.*, 751 F.Supp. 128 (S.D.Tex.1990), the court, citing *United General*, held that when a mortgagee foreclosed upon property and subsequently accepted three monthly rental payments from a tenant, the mortgagee was bound by the terms of the pre-foreclosure lease, however unfavorable to the mortgagee. *Id.* at 131.

In the instant case, we find that NCNB was entitled to judgment as a matter of law. Peterson continued to possess the premises after the foreclosure by NCNB. Peterson continued to pay rent to NCNB at the rate set forth in the original lease for four months after the foreclosure sale, with full knowledge that NCNB had become the new landlord. In fact, Peterson made the payments *in response to* the May 10th letter notifying him to make payments, *pursuant to the lease*, to NCNB. NCNB accepted the rental payments. Under these circumstances, we conclude that there was an implied agreement to continue the lease as originally made upon the same terms. *See Peck & Hills*, 68 S.W.2d at 289. Accordingly, the trial court did not err in finding that the payment of rent was sufficient to affirm the lease.

To avoid this result, Peterson posits two arguments. First, he contends that he sent the rent payments only as a "tender of equitable rentals" while he was deciding whether to affirm the lease. He argues that he had to pay something to prevent a suit in equity for reasonable rentals, but that he did not intend to affirm the lease by making the payments. We have already held that to prevent his payment from being an affirmation, Peterson had to notify NCNB that he was not affirming the lease or take some action inconsistent with affirmation. He did not do so. His attempt to avoid the rule announced in *United General* by offering evidence of his subjective intent or what he "really meant" by sending the rentals does not raise a disputed material issue of fact. Accordingly, the trial court properly granted summary judgment as a matter of law.

Second, Peterson argues that NCNB's request that he execute an express confirmation form proves that NCNB did not

---

**2.** The court quoted, with approval, the following:

> Leases receive the same treatment as other encumbrances. Thus, a lease executed before the deed of trust lien is superior to and not extinguished by foreclosure, and the purchaser at the trustee's sale becomes the new landlord. Conversely, *leases executed after the recording of the deed of trust may be terminat-*
>
> *ed at the foreclosure sale. However, the purchaser at the sale and the tenant may continue the lease; if the tenant offers and the purchaser accepts rent payments after the foreclosure, they have impliedly done so.*
>
> W. Mike Baggett, Texas Foreclosure Law and Practice § 2.87 (1984) (emphasis added). *United General*, 740 S.W.2d at 886.

believe he was bound by the prior lease. He apparently contends that if NCNB did not believe it was bound by the prior lease then his payments could not constitute an affirmation of the lease. NCNB's request that Peterson sign a lease confirmation agreement does not negate the existence of a contractual obligation based on Peterson's conduct. That NCNB would seek to strengthen its legal position through execution of a written confirmation agreement does not establish that the prior lease was unenforceable without the confirmation agreement. NCNB's attempt to reduce the implied agreement to writing does not raise a fact issue as to its intent to be bound by the prior lease based on its request for and acceptance of the lease payments. It also does not raise a fact issue as to whether NCNB considered the lease affirmed by Peterson. The trial court properly held as a matter of law that Peterson affirmed the lease. The payment of rent with full knowledge of the foreclosure sale and the failure to take timely action to disaffirm the lease is sufficient evidence, as a matter of law, to show that Peterson affirmed the lease. We overrule Peterson's two points of error. We affirm the trial court's judgment.

LAGARDE, Justice, concurring.

I agree with the majority's conclusion that there is sufficient evidence to show that Peterson affirmed the lease. I disagree with their decision that this case is an appeal from a summary judgment. The parties clearly intended for the trial court to decide this case and for this Court to review it as an agreed case under rule 263. *See* TEX.R.CIV.P. 263.

As the majority note, the parties filed motions and cross-motions for summary judgment. In its cross-motion, NCNB agreed that Peterson's affidavit accurately stated the facts and that the only issue was the application of the law to these facts. The parties then jointly filed a "Rule 263 Submission of Agreed Case." In the submission of agreed case, the parties agreed that Peterson's affidavit, with the exception of one paragraph, "accurately set forth the objective facts underlying the dispute." The parties then referred the court to their respective motions for summary judgment for their legal arguments.

The majority conclude that this case was a summary judgment instead of an agreed case because the trial court did not certify the stipulations and because "it is clear from the record the trial court considered matters other than the stipulations in rendering its judgment." The fact that the trial court did not certify the stipulation is of no moment in light of the failure of either side to object to or even raise that fact. As long as the parties stipulate all of the facts, their failure to comply strictly with rule 263 does not prevent the case from being decided as an agreed case. *Lambda Constr. Co. v. Chamberlin Waterproofing & Roofing Sys., Inc.,* 784 S.W.2d 122, 125 (Tex.App.—Austin 1990, writ denied); *Reed v. Valley Fed. Sav. & Loan Co.,* 655 S.W.2d 259, 264 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Here, the parties stipulated that Peterson's affidavit constituted all the facts of the case. Any error by the trial court in not certifying the stipulation was waived by the parties' failure to bring the lack of certification to the trial court's attention.

As for the issue of whether the trial court clearly considered evidentiary matters other than the stipulation in rendering judgment, the majority apparently rely on the following language in the judgment:

The [c]ourt has carefully considered the Rule 263 Submission, *the prior motions for summary judgment filed by each party,* and the arguments and authorities presented by counsel. Based upon such consideration, the [c]ourt is of the opinion that judgment should be rendered in favor of plaintiff NCNB Texas National Bank.

(Emphasis added.) The fact that the trial court considered the prior motions for summary judgment does not mean that the trial court considered evidence other than the stipulation in rendering judgment. Peterson's motion for summary judgment contained two types of summary judgment evidence: Peterson's affidavit with its referenced documents, which is the stipulation

in the rule 263 agreed case, and Peterson's request for admissions to NCNB and NCNB's answer to the request. The issues in the request for admissions are all contained in Peterson's affidavit, and the answers are consistent with the affidavit. Therefore, even if the trial court did "carefully [consider]" the request for admissions and the answers thereto in Peterson's motion for summary judgment, the court could not have considered anything not contained in Peterson's affidavit. NCNB's cross-motion for summary judgment did not contain any summary judgment evidence. I, therefore, conclude that the trial court did not consider any evidentiary matters outside the stipulation in rendering judgment. Accordingly, I would treat this case the way the parties tried it below and argued it before this Court—as an agreed case under rule 263.