# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-98-00558-CV

**Greg Abbott, Attorney General of the State of Texas, Appellant**

**v.**

**Blue Cross and Blue Shield of Texas, Inc.; Group Life and Health Insurance Company; Group Medical and Surgical Services; Rio Grande HMO, Inc.; Healthcare Benefits, Inc.; Dental Benefits, Inc.; Motiva, Inc.; Comstar Communications, Inc.; Arizona/Texas International, Inc.; Custom General Agency, Inc.; and Texcare HMO, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. 9613907, HONORABLE JOSEPH H. HART, JUDGE PRESIDING

## O P I N I O N

The Texas Attorney General, appellant, brought suit in district court[1] against appellee

Blue Cross and Blue Shield of Texas, Inc. ("Blue Cross/Texas") and others[2] opposing a proposed

---

[1] This suit was originally brought in the name of a predecessor to the present attorney general. We have substituted the current holder of that office as the correct party to this proceeding. *See* Tex. R. App. P. 7.2(a).

[2] The Attorney General also sued Group Life and Health Insurance Company, Group Medical and Surgical Services, Rio Grande HMO, Inc., HealthCare Benefits, Inc., Dental Benefits, Inc., Motiva, Inc., ComStar Communications, Inc., Custom General Agency, Inc., and TexCare HMO, Inc., described by the attorney general as "wholly-owned, for-profit subsidiaries of [Blue Cross/Texas], operating under the aegis of [Blue Cross/Texas], which hold assets for or on behalf of [Blue Cross/Texas]," and Arizona/Texas International, Inc., West Texas Health Plans, L.C., d/b/a

merger between Blue Cross/Texas and Healthcare Service Corporation of Illinois, doing business as Blue Cross and Blue Shield of Illinois ("Blue Cross/Illinois"), asserting, *inter alia*, that Blue Cross/Texas is a common-law charity that must preserve its assets for charitable purposes and the merger is prohibited by the Texas Non-Profit Corporation Act.[3] After trial and after the district court apprized the parties by letter of his decision, but before the court rendered a final judgment, the parties partially settled their dispute, allowing Blue Cross/Texas and Blue Cross/Illinois to merge and agreeing that, if Blue Cross/Texas is held to be a common-law charitable corporation, the merged entity will ultimately pay to one or more charitable trusts or foundations designated by the attorney general the sum of $350,000,000 plus interest.[4] The district court's final judgment holds that Blue Cross/Texas is not a charity. The Attorney General appeals, presenting one issue to this Court: whether the district court erred in holding that Blue Cross/Texas is not a common-law charitable corporation.[5] We will affirm the district-court judgment.

HMO Blue, West Texas, and Mid-Con Health Plans, L.C., d/b/a HMO Blue, SouthWest Texas (also referred to in the pleadings as Mid-Con Health Plans, Inc.), described as "for-profit joint ventures in which [Blue Cross/Texas] has various partnership or other business interests, and each holds assets for or on behalf of [Blue Cross/Texas]." Before trial, the Attorney General nonsuited West Texas Health Plans and Mid-Con Health Plans. The remaining original defendants are appellees in this Court. Appellees' interests do not diverge and, for convenience, we will refer to them collectively as "Blue Cross/Texas."

[3] *See* Tex. Rev. Civ. Stat. Ann. arts. 1396-1.01; 1.02A(1)-(3); 5.03 (West 1997).

[4] The original "Plan and Agreement of Merger" between Blue Cross/Texas and Blue Cross/Illinois was signed July 9, 1996, and was to become effective when the appropriate state authorities in Texas and Illinois had issued certificates of merger. The settlement agreement between the Attorney General and Blue Cross/Texas was signed September 17, 1998.

[5] The parties' district-court pleadings, their briefs in this Court, their stipulations, and the district court's final judgment, findings, and conclusions use the terms "charity," "public charity," "common-law charitable corporation," "common-law charity, "and "charitable organization"

2

## FACTUAL BACKGROUND

For all practical purposes, the concept of what is now generally known as group health insurance began in 1929 when representatives of Baylor Hospital in Dallas created a prepaid hospital service plan known as the "Baylor Plan." Initially devised to provide group hospital insurance only to Dallas public school teachers seeking treatment at Baylor Hospital, the Baylor Plan proved successful and was extended to provide coverage to other employment groups seeking treatment at other hospitals. The Baylor Plan apparently operated without any state regulation; by contract the individual participants would pool a small sum of money each month from which the hospital expenses of all contributors would be paid. *See 25 Years of Progress in Hospital Care Prepayment*, American Hospital Association (1955) (The 25th Anniversary Year Brochure).

In 1939, the 46th Texas Legislature acted to allow corporations to provide group hospital services. Act of May 2, 1939, 46th Leg., R.S., ch. 1, §§ 1-16, 1939 Tex. Gen. Laws 123, *repealed by* Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 4, 1951 Tex. Gen. Laws 868, 1095. ("House Bill 191"). House Bill 191 authorized corporations to be created "for the purpose of establishing, maintaining and operating a nonprofit hospital service plan, whereby hospital care may be provided by [the] corporation through an established hospital or hospitals. . . with which [the corporation] has contracted for such care . . . ." *Id.* § 1 at 123. H.B. 191 was effective May 10, 1939. *Id.* at 126. Corporations organized pursuant to House Bill 191 were to be subject to the supervision

---

interchangeably. As used by the district court and the parties, we understand all such terms to mean the same thing: an entity subject to the application of the doctrine of *cy pres*. Such will also be their meaning in this opinion.

of the State Insurance Commission and Board of Insurance Commissioners. *See id.* §§ 3, 7-8, 12-13, 15 at 124-26.**[6]**

Less than two weeks later, on May 23, 1939, articles of incorporation for Blue Cross/Texas were signed.**[7]** The articles were approved by the Texas Secretary of State, who issued Blue Cross/Texas's corporate charter on June 2, 1939. Blue Cross/Texas operated continuously until its merger with Blue Cross/Illinois in 1998. Under the terms of the merger, Blue Cross/Illinois is the surviving merged entity.

Throughout its almost sixty-year existence, Blue Cross/Texas's only purpose was to operate a nonprofit hospital service plan under chapter 20 of the Texas Insurance Code or its predecessor. *See* Tex. Ins. Code Ann. arts. 20.01-.21 (West 1981 & Supp. 2001).

## STANDARD OF REVIEW

The parties disagree as to the standard this Court should follow in reviewing the district-court judgment. The district court filed findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296-298. The Attorney General argues that this case was tried on stipulated facts and should be reviewed as an "agreed case." *See* Tex. R. Civ. P. 263. "An agreed statement of facts under rule 263 is similar to a special verdict; it is the parties' request for judgment under the applicable law." *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.—Fort Worth 1996,

---

**[6]** The Texas Department of Insurance and the insurance commissioner now perform the duties of the State Insurance Commission and Board of Insurance Commissioners. *See* Act of May 27, 1991, 72d Leg., R.S., ch. 242, art. 1, § 1.01, 1991 Tex. Gen. Laws 939, 939.

**[7]** Blue Cross/Texas was originally incorporated as "Group Hospital Service, Incorporated." The articles of incorporation were amended in 1983 to change the corporation's name to "Blue Cross and Blue Shield of Texas, Inc."

writ denied) (citing *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 634 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). If this is a rule 263 agreed case, the only issue on appeal is whether the district court properly applied the law to the agreed facts. *See id.*; *Chiles*, 858 S.W.2d at 635. In such instance, this Court would be limited in our consideration to those agreed facts. *See Sharyland Water Supply Corp. v. Hidalgo County Appraisal Dist.*, 783 S.W.2d 297, 298 (Tex. App.—Corpus Christi 1989), *aff'd sub nom. North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894 (Tex. 1991). Such a review is less deferential to the trial court, because a "trial court has *no* discretion in deciding what the law is or in properly applying it." *Kessler*, 932 S.W.2d at 735 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). If the trial court files findings of fact in an agreed case, they are disregarded by the appellate court. *Davis v. State*, 904 S.W.2d 946, 950 (Tex. App.—Austin 1995, no writ). The Attorney General thus urges us to disregard the district court's findings of fact.

Blue Cross/Texas asserts that although there were numerous stipulations, this is not an agreed case and the district court considered disputed fact issues in making its decision. Thus, it was appropriate for the district court to file findings of fact and those findings should be considered by this Court.

Rule 263 provides in its entirety:

> Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause.

Tex. R. Civ. P. 263.  Although the record does not contain an "agreed statement signed and certified

by the [district] court to be correct," this Court has held that strict compliance with rule 263 is not

a prerequisite for an agreed case.  *See Lambda Constr. Co. v. Chamberlin Waterproofing & Roofing

Sys., Inc.*, 784 S.W.2d 122, 125 (Tex. App.—Austin 1990, writ denied) (citing *Reed v. Valley Fed.

Sav. & Loan Co.*, 655 S.W.2d 259, 264 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.); *Henry

S. Miller Co. v. Wood*, 584 S.W.2d 302, 303 (Tex. Civ. App.—Texarkana 1979), *aff'd*, 597 S.W.2d

332 (Tex. 1980)); *see also Kessler*, 932 S.W.2d at 735 ("an appellate court may treat the case as a

case involving an agreed statement of facts under rule 263 if the record indicates that the trial court

heard the case on stipulated facts") (citing *Lambda Constr. Co.*, 784 S.W.2d at 125).

An examination of the record from the district court reveals that although a large part

of the evidence before the district court consisted of the parties' stipulations, the court was correct

in not treating the case as agreed.  The parties initially filed what they termed a "Stipulation of

Facts," consisting of 397 written stipulations and 126 exhibits.  The stipulation was twice

supplemented, adding 51 written provisions and 33 exhibits.  Each of the filings was signed by the

attorneys for the parties and prefaced with the following agreement:

> [The parties] hereby file the following . . . as evidence in this cause, and in order to
> expedite the conclusion of this Litigation and to prevent the unnecessary expenditure
> of resources of [the parties], [the parties] agree and stipulate that the following facts,
> exhibits and affidavits (including any attachments to such affidavits) attached hereto,
> and all facts recited in the exhibits, except as specifically set forth in [certain
> identified stipulations] and affidavits (including any attachments to such affidavits),
> are true and correct for all purposes of this Litigation and only for purposes of this
> Litigation and may be considered by [the district court] as evidence in this Litigation
> with the same dignity, force and effect as if such facts, exhibits, and testimony in
> such affidavits (and attachments to such affidavits) were offered in evidence at a trial

6

on the merits, through competent witnesses testifying at a trial, and such facts, exhibits, testimony, and attachments were admitted into evidence in this Litigation.[8]

It is significant that the agreement does not reflect an agreement that the stipulations are complete or accurate, does not state that it was the parties' intention that this be an agreed case, and does not reference rule 263. Before trial, the parties corresponded, apparently unsuccessfully, about "correcting" certain of the stipulations, and the attorney general moved to "correct" others. Blue Cross/Texas objected to the motion, urging that it was "a last minute attempt to change the stipulations." The district court observed that he could not force the parties to agree on the stipulations but would like them to be accurate and encouraged the parties to "see if you can't modify the stipulations to fit what the actual facts are." It does not appear from the record that the stipulations were subsequently changed.

The Attorney General also filed objections to and a motion to strike portions of Blue Cross/Texas's trial brief on the basis that Blue Cross/Texas was attempting "improperly to supplement the record in this case and assert facts which have not been stipulated by the parties." At trial, the Attorney General waived his objections and motion and asked the court to take judicial notice of an additional document. Blue Cross/Texas objected on the ground that it had not "had an opportunity to analyze or consider anything about [the document]." The court responded that it was the court's intention "to consider just about anything but give everybody a chance to respond."

After the district court signed the final judgment in this cause, Blue Cross/Texas requested the court to file findings of fact and conclusions of law. The Attorney General objected

---

[8] The original stipulation was amended once. The amendment did not include a similar preface or agreement.

to the request and, asserting that the case had been tried as a rule 263 agreed case, requested the court to sign the stipulations "and certify them to be correct." Blue Cross/Texas responded by again requesting that the court file findings and conclusions and deny the Attorney General's request for rule 263 certification. Ultimately, the district court filed findings and conclusions and denied the Attorney General's motion to sign the stipulations.

Distilled, the above-noted portions of the district-court record reveal that the parties did not jointly request that the court treat this case as agreed and did not comply with rule 263. Until the moment of trial, the parties were arguing about what evidence should be before the court. There is no evidence that the district court treated the case as agreed. The court considered evidence that was not subject to the stipulations. Blue Cross/Texas consistently objected to the case's being considered an agreed case by the district court. We have found no case, and have been directed by the parties to none, where an appellate court has declared a case to be agreed pursuant to rule 263 when the trial court has treated it otherwise. We hold, under circumstances such as these, that it is within the trial court's discretion to determine whether a case is an agreed case. "A trial court abuses its discretion if its decision 'is arbitrary, unreasonable, and without reference to guiding principles.'" *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). In the present instance, we cannot say that the district court abused its discretion in refusing to certify the stipulations and in making findings and conclusions. *See also Peterson v. NCNB Tex. Nat'l Bank*, 838 S.W.2d 263, 265 (Tex. App.—Dallas 1992, no writ) (holding no agreed case when trial court considered matters other than stipulations in rendering judgment). Therefore, we will not review this cause as an agreed case.

8

**DISCUSSION**

**The Doctrine of** *Cy Pres*

The Attorney General's petition, as well as his brief to this Court, posits that he filed suit under his constitutional and common-law powers to protect charitable trusts. In so doing, he invokes the equitable doctrine of *cy pres*. The doctrine is of ancient origin and, as described by Justice Story, applies

> . . . where a literal execution [of a charitable bequest] becomes inexpedient or impracticable, the court will execute it, as nearly as it can, according to the original purpose, or (as the technical expression is) *cy pres*. This doctrine seems to have been borrowed from the Roman law; for by that law, donations for public purposes were sustained and were applied, when illegal, *cy pres*, to other purposes, at least one hundred years before Christianity became the religion of the empire.

Joseph Story, *Commentaries on Equity Jurisprudence* 806-07 (1st English ed.) (Legal Classics Library 1988) (1884) (footnotes omitted); Edith L. Fisch, *The Cy Pres Doctrine in the United States* 3 (1950).

In Texas, the first general explanation of the doctrine and its application appears in *Inglish v. Johnson*, 95 S.W. 558, 560 (Tex. Civ. App.—Dallas 1906, writ ref'd). The court noted that the doctrine is founded in this country "upon the common law" and its application "in the exercise of a general equity jurisdiction is favored here." *Id.* Today

> [t]he most common application of the cy pres doctrine is in the law of charitable trusts. If it is impossible, impractical, or illegal to carry out the terms of a charitable trust, and the settlor has indicated a general charitable purpose, the courts will authorize the substitution of another charitable scheme within the general purpose.

9

*Rekdahl v. Long*, 417 S.W.2d 387, 396 (Tex. 1967) (Steakley, J., dissenting).[9] For the doctrine to apply, there must exist a charitable trust established for a general charitable purpose, whose original charitable purpose has failed. Historically, for *cy pres* to apply to a failed charitable trust, the donation or bequest that established the trust must have been made with the intent that it be used only for charitable purposes. *See* Frisch, *supra* at 149.

The district court held that the doctrine of *cy pres* did not apply because Blue Cross/Texas was not a charitable organization. In one issue, the Attorney General asserts that the district court erred in holding that Blue Cross/Texas was not a common-law charitable corporation. The Attorney General argues the issue in two subparts: (1) the 1939 statute under which Blue Cross/Texas was organized compelled that the corporation by definition be a common-law charity, and thus it was as a matter of law; and (2) the district court should not have considered Blue Cross/Texas's current operations and lack of tax-exempt status in reaching his conclusion.

**Was Blue Cross/Texas a Common-Law Charity by Virtue of its Incorporation?**

The Attorney General presents a straightforward argument: "Under the law of charitable trusts, whether Blue Cross/Texas is a charity is determined by whether Blue Cross/Texas was created as a common-law charity in 1939." He argues that because House Bill 191 provided that "[c]orporations may be created as charitable, benevolent and nonprofit corporations to furnish hospital services to its members," Blue Cross/Texas could only have been incorporated under such

---

[9] The phrase itself probably comes from the Norman French expression *cy pres comme possible*, meaning "as near as possible." Edith L. Fisch, *The Cy Pres Doctrine in the United States* 1 (1950). It is most often pronounced "sī-pray." *See* Bryan A. Garner, *A Dictionary of Modern English Usage* 242 (2d ed. 1995).

10

provision and, therefore, is a common-law charity. Act of May 2, 1939, 46th Leg., R.S., ch. 1, § 16, 1939 Tex. Gen. Laws 123, 126, *repealed by* Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 4, 1951 Tex. Gen. Laws 868, 1095. Blue Cross/Texas responds that Blue Cross/Texas was incorporated under section 1 of House Bill 191, which provides that an entity "may be incorporated for the purpose of establishing, maintaining and operating a nonprofit hospital service plan, whereby hospital care may be provided by said corporations through an established hospital or hospitals, and sanitariums with which it has contracted for such care, as hereinafter defined." *Id.* § 1 at 124.

The district court concluded as a matter of law that "Blue Cross/Texas is not a charitable organization subject to the *cy-pres* or charitable trust powers of the Attorney General." We review the trial court's conclusions of law *de novo*. *TeleVentures, Inc. v. International Game Tech.*, 12 S.W.3d 900, 907 (Tex. App.—Austin 2000, pet. denied) (citing *Piazza v. City of Granger*, 909 S.W.2d 529, 532 (Tex. App.—Austin 1995, no writ)). Conclusions of law will be upheld if the judgment can be sustained on any legal theory supported by the evidence and may not be reversed unless they are erroneous as a matter of law. *Westech Eng'g, Inc. v. Clearwater Consts., Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). In addressing this portion of the Attorney General's argument, we look only to House Bill 191 and Blue Cross/Texas's articles of incorporation. Its historical operation is of no relevance.

Both parties direct this Court to the language of Blue Cross/Texas's original 1939 articles of incorporation to support their respective positions. Specifically, they direct us to two provisions of the articles: the purpose clause and the power clause. Generally, such clauses play different roles. The purpose clause describes the object the corporation was organized to

11

accomplish.  Howard L. Oleck & Martha E. Stewart, *Nonprofit Corporations, Organizations, &*

*Associations* 496 (1994).  The purpose of a nonprofit corporation "must be of a charitable,

educational, religious, social or other nonprofit nature."  *Id.*  The power clause sets forth the ability

or capacity of the corporation to act as an entity.  *Id.*  It is the general power "granted by the law to

all corporations of its kind of class plus those granted by the approval of its specific charter."  *Id.* at

496-97.  The purpose clause is dominant.  It, not the power clause, is the real measure of corporate

authority.

Blue Cross/Texas's purpose clause reflects that the corporation was "formed for the

purpose of establishing, maintaining and operating a nonprofit hospital service plan whereby hospital

care may be provided to the members by said corporation through an established hospital or hospitals

and sanitariums with which it has contracted for such care."[10]  The clause tracks section one of

House Bill 191.  *See* Act of May 2, 1939, 46th Leg., R.S., tit. corporations—private, ch. 1, § 1, 1939

Tex. Gen. Laws 123, 124.  The corporation's power clause closely follows section sixteen: "This

corporation will be one of charity and benevolence and will have no capital stock and own no

assets."[11]  *Id.* § 16 at 126.  Each party thus may find some support for its position within Blue

Cross/Texas's articles of incorporation.

Following enactment, the first fifteen sections of House Bill 191 became article

4590a, a part of Texas's public health laws.  *See* Act of May 2, 1939, 46th Leg., R.S., ch. 1, §§ 1-15,

---

[10]  The parties stipulated that this clause is Blue Cross/Texas's purpose clause.

[11]  The parties stipulated that this clause states the "classification" of Blue Cross/Texas.  A corporation's classification determines what powers are granted it by law.  *See* Howard L. Oleck & Martha E. Stewart, *Nonprofit Corporations, Organizations, & Associations* 496-97 (1994).

12

1939 Tex. Gen. Laws 123, 123-26 (*formerly* §§ 1-15, Art. 4590a, Vernon's Ann. Civ. Stat.), *repealed by* Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 4, 1951 Tex. Gen. Laws 868, 1095. Section sixteen however specifically amended and became a part of article 1302, the general corporation statute. *See id.* § 16 at 126 (*formerly* subd. 104, Art. 1302, Vernon's Ann. Civ. Stat.). Blue Cross/Texas argues that this divided codification is further indication that it could incorporate under section one. The Attorney General disagrees, asserting that section sixteen is the only section that provided "specific legislative authorization" for the incorporation of group health plans; the other sections constituted but "general provisions governing the creation and operation of the group hospital service plans" authorized by the legislature. He characterizes Blue Cross/Texas's position as one designed to distance itself from section sixteen, because if the corporation was organized for charitable, benevolent, and nonprofit purposes, it was a common-law charity as a matter of law.

Because, for purposes of this opinion, we will presume without deciding that Blue Cross/Texas was incorporated under section 16, we need not determine whether the legislature intended that group hospital plans could be incorporated under section one. We disagree with the Attorney General that if Blue Cross/Texas was incorporated in 1939 as a charitable, benevolent, and nonprofit corporation, it was a common-law charity and, if so, it remained a common-law charity for the duration of its existence. To do so would be to attribute greater importance to Blue Cross/Texas's power clause than to its purpose clause and, more importantly, ignore the plain language of section 16. Section 16 does no more than allow incorporation "to furnish hospital services to [the corporation's] members." Act of May 2, 1939, 46th Leg., R.S., ch. 1, § 16, 1939 Tex. Gen. Laws 123, 126, *repealed by* Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 4, 1951 Tex.

13

Gen. Laws 868, 1095. By its very language, the section contemplates that a hospital services corporation would have members, thus restricting the class of persons that the corporation may benefit. It specifically authorizes such a corporation to benefit only itself, not the general public. House Bill 191 nowhere anticipates or requires that Blue Cross/Texas will receive its funding from charitable contributions or donations. The statute requires neither a settlor nor a donor.

Section three provides further evidence that the legislature anticipated that a hospital-service-plan corporation would function without charitable contributions: "said corporations shall be governed and conducted as nonprofit organizations for the sole purpose of offering and furnishing hospital service to its members *in consideration of the payment by such members of a definite sum for the hospital care so contracted to be furnished. Id.* § 3 at 124 (emphasis added).

The Attorney General forcefully argues that there was a general public purpose driving the formation of Blue Cross/Texas. He points out that the legislature enacted House Bill 191 at the end of the Great Depression. The loss of millions of jobs and soaring unemployment led to a growing public recognition of the need for some mechanism by which middle-income people could finance the rising costs of hospitalization, particularly because hospital insurance was virtually nonexistent at the time. Hospital plans would deal with health services long recognized as a community responsibility. They would not operate as traditional insurance companies, but would provide health services to persons who might otherwise require the aid of philanthropic groups or be a burden to taxpayers. Blue Cross/Texas responds that health insurance was readily available in Texas in 1939, and at the time Blue Cross/Texas was incorporated, several Dallas hospitals were offering group hospitalization to the general public; furthermore, at least one insurance company was

14

selling group hospitalization insurance in Texas's major cities. However, the motivation behind the enabling legislation cannot obscure that the legislature allowed the formation of corporations to establish group health services plans solely for the benefit of the corporations' members, not the public as a whole. Further, although the legislature may enact a law in response to a pressing social need, it may allow that need to be addressed by private, not public entities. We do not believe that in enacting House Bill 191 the legislature intended to create common-law charities as the exclusive instrument for the administration of group hospital plans.

The Attorney General directs this Court to *Blocker v. State* to support his contention that Blue Cross/Texas is a common-law charity. 718 S.W.2d 409 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e). He argues that "[w]hen a corporation is created as a common-law charity—ordinarily, as here, by a *declaration* in the articles of incorporation—that *declaration* is a permanent and irrevocable designation of those assets for charitable purposes." (Emphasis added.) The argument, by the use of the term *declaration*, avoids specific scrutiny of the corporation's purpose clause and construes *Blocker* too broadly. In *Blocker,* "the articles of incorporation specifically provided that the *purpose* of the corporation was the 'teaching of the [y]outh of this land music and its allied arts,'" and the court observed that education "is considered a charitable purpose." *Id.*, 718 S.W.2d at 415 (emphasis added). The court grounded its holding on the necessity of the organization's having been organized for the benefit of the public:

> Because a charitable corporation is organized for the benefit of the public, *and not for private profit or for its own benefit*, the public has a beneficial interest in all property of a public benefit, non-profit corporation. Such a corporation has legal title to the property but may use it only in furtherance of its charitable purposes.

15

*Id.* (emphasis added). The plain language of Blue Cross/Texas's purpose clause makes it clear that the corporation was organized to benefit its members. The plain language of House Bill 191 allowed Blue Cross/Texas to be organized for the benefit of its members. We will not read more into the legislature's action, and we decline to hold, as a matter of law, that a corporation formed under House Bill 191 automatically became a charitable trust or public charity. We reject the Attorney General's contention that "Blue Cross/Texas's status as a common-law charity was irrevocably formed at the moment of its inception." Simply stated, we hold that where the law allows a nonprofit corporation to be operated solely for the benefit of its members, the corporation cannot be deemed as a matter of law to be a public charity.

Although the Attorney General has chosen to base his attack on the district-court judgment solely on the application of House Bill 191, the evidence must still support the findings that led the court to the conclusion that Blue Cross/Texas was not a charity. Thus, our inquiry has not ended. "Whether an organization is a purely public charity is a question of fact." *Baptist Mem'ls Geriatric Ctr. v. Tom Green County Appraisal Dist.*, 851 S.W.2d 938, 945 (Tex. App.—Austin 1993, writ denied) (citing *First Baptist/Amarillo Found. v. Potter County Appraisal Dist.*, 813 S.W.2d 192, 195 (Tex. App.—Amarillo 1991, no writ); *Lamb County Appraisal Dist. v. South Plains Hosp.—Clinic, Inc.*, 688 S.W.2d 896, 903 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.)).

The district court made nineteen findings of fact. "A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer." *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Starcrest Trust v. Berry*, 926 S.W.2d 343, 352 (Tex. App.—Austin 1996, no writ). The

16

Attorney General does not challenge the district court's findings. He urges instead that the stipulated facts support his position that Blue Cross/Texas was a public charity as a matter of law. The district court's findings are thus binding on this Court.

> When findings of fact are filed and are unchallenged, as here, they occupy the same position and are entitled to the same weight as the verdict of a jury. They are binding on an appellate court unless the contrary is established as a matter of law, or it there is no evidence to support the finding.

*McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (citing *Swanson v. Swanson*, 228 S.W.2d 156 (Tex. 1950)); *Teague v. Bandy*, 793 S.W.2d 50, 53 (Tex. App.—Austin 1990, writ denied) (citing *McGalliard*, 722 S.W.2d at 696). The Attorney General bore the burden of proving that Blue Cross/Texas was a public charity. Thus, to prevail, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of his position. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)); W. Wendell Hall, *Standards of Review in Texas*, 34 St. Mary's L.J. 1, 164 (2002). The reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co.*, 46 S.W.3d at 241 (citing *Sterner*, 767 S.W.2d at 690); Hall, *supra*, at 165. The issue should be sustained only if the contrary proposition is conclusively established. *Dow Chem. Co.*, 46 S.W.3d at 241 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)); Hall, *supra*, at 165.

We begin our analysis by returning to Blue Cross/Texas's purpose clause. The clause reinforces that the corporation's activities would be devoted solely to the benefit of its members by expressing that Blue Cross/Texas would establish, maintain, and operate a "nonprofit hospital

17

service plan *whereby hospital care may be provided to the members by said corporation.*" (Emphasis added.) Blue Cross/Texas's articles of incorporation propose no general charitable purpose directed toward the public as a whole or toward any indefinite or undefined segment of the public.

To constitute a public charity or charitable trust, a corporation must be organized "for the benefit of the public, and not for private profit *or its own benefit.*" *Blocker*, 718 at 415 (emphasis added); *accord Powers v. First Nat'l Bank*, 161 S.W.2d 273, 278 (Tex. 1942) (holding that "a gift for the relief of poverty generally is a gift to a purely public charity because it relieves the whole citizenship of its burden to the extent of the gift"); *cf. Baywood Country Club v. Estep*, 929 S.W.2d 532, 538 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (holding that conveyance for benefit of *members* of corporation, not for benefit of *indefinite beneficiaries*, established corporation as private entity rather than public organization) (citing *Blocker*, 718 S.W.2d at 415).

The district court found that Blue Cross/Texas

> operates only for the benefit of its policyholders, not the public at large[,] . . . does not receive gifts or charitable contributions[,] . . . is not exempt from federal income tax[,] . . . does not fall within section 501(c)(3) of the Internal Revenue Code[,] . . . is not exempt from state sales tax, state premium tax nor state ad valorem tax[, and] . . . in practice . . . has none, and has never had any, of the attributes of a charity.

These findings support the court's conclusion that Blue Cross/Texas was not a charitable corporation.

In support of his findings, the district court considered, *inter alia*, the following stipulations of the parties:

18

- Blue Cross/Texas's corporate surplus and reserves have been accumulated from policyholder premiums, administrative service fees, subrogation, and earned investment income in excess of contractual benefits paid to its policyholders and business expenses;

- a charitable contribution is a contribution in money or property given from a detached and disinterested generosity, gratuitously and without consideration, to an organization in order to support a charitable purpose or charitable purposes.

- Blue Cross/Texas has not received charitable contributions;

- Blue Cross/Texas has not received contributions that would be considered charitable contributions allowed by the Internal Revenue Code to be deductible as such from the gross income of the payor;

- Blue Cross/Texas has not received any money, other than from investments, without incurring a contractual obligation to provide benefits or services pursuant to the terms of insurance policies or other contracts;

- premiums paid to Blue Cross/Texas by its policyholders in return for Blue Cross/Texas's contractual obligation to provide payments for its policyholders' eligible health-care claims have never been charitable contributions or allowed by the Internal Revenue Code to be deductible as such from the policyholders' gross income;

- Blue Cross/Texas has not provided any gratuitous or charitable insurance benefits to any individual or group;

- Blue Cross/Texas has not provided insurance to any individual or group that has not compensated Blue Cross/Texas for such insurance;

- Blue Cross/Texas has not provided insurance coverage or benefits to any individual or group other than that provided to its policyholders;

- Based on Blue Cross/Texas's records available at trial, all charges by Blue Cross/Texas to its policyholders have been set at competitive market rates, have never been intentionally set below Blue Cross/Texas's cost of providing insurance, and have always been set with the intention of generating a profit to be added to Blue Cross/Texas's surplus and used in its business;

- Blue Cross/Texas has never been an "insurer of last resort," that is, an insurance provider that is required by statute to offer insurance coverage or a particular type

19

to every person, otherwise uninsurable, in a particular group or class of persons at a rate to be calculated pursuant to such statute; and

- in no year from calendar year 1977 through calendar year 1996, did Blue Cross/Texas make charitable contributions in excess of two-thirds of one-tenth of one percent of its total revenues.

The evidence makes it clear that Blue Cross/Texas acquired none of its assets from donors who intended their donations to contribute to the public benefit. In fact there is no evidence that the corporation has ever received a donation or that one has ever been made. The evidence is undisputed that all of the assets maintained by Blue Cross/Texas at the time of its merger with Blue Cross/Illinois were either originally obtained through transactions with a *quid pro quo* or were a result of the investment of the proceeds of those transactions. Not only has Blue Cross/Texas never had a public charitable purpose, the evidence is undisputed that with only minor exceptions, all revenues generated by Blue Cross/Texas have been used to benefit its policyholders or for its own corporate purposes.[12]

The Attorney General has failed to demonstrate that the evidence establishes, as a matter of law, all vital facts necessary to support his position that Blue Cross/Texas was a public

---

[12] The district court also found that Blue Cross/Texas had numerous attributes of an insurance company, including its being "subject to extensive governmental regulation as an insurance company" and supervised by the Texas Department of Insurance and Insurance Commissioner. Blue Cross/Texas must maintain at least 500 paying subscribers to continue operating, file annual financial statements in the same manner as other insurance companies, maintain adequate reserves, receive a certificate of authority from the Texas Department of Insurance, maintain a minimum surplus, be periodically examined by the department, and belong to a guaranty association, thereby subjecting it to the possibility that Blue Cross/Texas might "have to help pay claims against impaired for-profit insurance companies." The Attorney General does not dispute these findings. Although the findings do not establish that Blue Cross/Texas is an insurance company, they do reflect that Blue Cross/Texas's operations were inconsistent with a common-law charity.

charity.  *See Dow Chem. Co.*, 41 S.W.3d at 241.  The evidence in this record, most of it stipulated, establishes the contrary and conclusively supports the district court's findings.[13]

**Blue Cross/Texas's Current Operations and Lack of Tax-Exempt Status**

The Attorney General is critical of the district court's approach in examining Blue Cross/Texas's operational attributes based on precedent derived from "*quo warranto*, tax exemption, and charitable immunity cases."  Indeed, as expressed in his judgment, the district court examined cases decided in a wide variety of contexts.  Primarily, the Attorney General is critical of the court's apparent reliance on *Farmer v. State ex rel. Carruthers* as authority for examining Blue Cross/Texas's "actual practices" to determine whether it was a charity.  7 S.W. 220 (Tex. 1888). *Farmer* was a *quo warranto* case brought to revoke a corporation's franchise on the basis that although the corporation had been organized as a "benevolent association," it was in fact operating

---

[13] Both parties direct this Court to opinions of courts in other states.  These opinions are not particularly helpful in that they involve statutes and issues unique to the particular state's group health plans.  To the extent they provide any guidance, they trend toward Blue Cross/Texas's position. *See, e.g.*, *United Hosps. Serv. Ass'n v. Fulton County*, 114 S.E.2d 524, 527 (Ga. 1960) ("This is pure and simple insurance in direct competition with private concerns which are engaged in the same business but enjoy no tax-exemption benefit."); *Illinois Hosp. & Health Serv., Inc. v. Aurand*, 373 N.E.2d 1021, 1025 (Ill. App. Ct. 1978) ("It can thus be seen that this corporation, laudable and desirable as it may be, is for the benefit of those members who make their payments. If they do not pay they are dropped from the rolls.  No provision is found under this plan whereby any charity is dispensed to those members who do not pay, or to any destitute member of society in general."); *Consumers for Affordable Health Care v. Iuppa*, 2001 WL 1794975 (Me. Super. 2001) (specific statute governed conversion of Blue Cross/Blue Shield of Maine to stock insurer); *Blue Cross & Blue Shield of Mo. v. Nixon*, 2002 WL 7553387 (Mo. App. W.D. 2002) (opinion does not address whether Missouri Blue Cross Blue Shield organization was common-law charity); *Blue Cross & Blue Shield of Kans. City, Inc. v. Nixon*, 2000 WL 779053 (Mo. App. W.D. 2000) (organization examined under Missouri statute to determine purpose for which it was organized); *ABC for Health, Inc. v. Commissioner of Ins.*, 640 N.W.2d 510, 515-16 (Wis. App. 2001) (Wisconsin Blue Cross Blue Shield organization not a charity because not operated exclusively for charitable purposes but for benefit of individuals who paid premiums).

21

for the benefit of its members.[14] *Id.* at 220. In reaching its conclusion that the corporation was an insurance company, the supreme court observed that "[i]t matters not what name the association may assume. The law looks to the real objects of the body, and not to the name indicative of benevolence which it may have assumed." *Id.* at 223. The court also noted that "it was proper to inquire into all facts tending to show whether the appellants were a benevolent association, or an insurance company conducted for the gain of its officers." *Id.* at 224. The Attorney General would restrict review of an alleged charitable corporation's actual activities to *quo warranto* cases, and stresses that *Farmer* was decided before the legislature enacted House Bill 191.

To bolster his position, the Attorney General calls this Court's attention to our own opinion in *State v. Texas Mutual Life Insurance Co.*, 51 S.W.2d 405, 409 (Tex. Civ. App.—Austin 1932), *rev'd on other grounds*, 58 S.W.2d 37 (Tex. 1933). In *Texas Mutual Life*, also a *quo warranto* case, we construed *Farmer* to go "no further than [holding] that the association there under consideration was not benevolent . . . it was organized for profit and was therefore not benevolent . . . ." *Id.* But we went on to infer that a court must examine the actual operations of a corporation to determine its true purpose: "The [*Farmer*] opinion points out that the record showed that the real purpose of the association was to provide salaries and commissions for its officers." *Id.* This Court also approved of the *Farmer* approach in *State v. Memorial Benevolent Society*, 384 S.W.2d 776, 778 (Tex. Civ. App.—Austin 1964, writ ref'd n.r.e.). The Attorney General argues that *Memorial Benevolent Society* is "inapplicable because House Bill 191 specifically authorized *and required*

---

[14] A *quo warranto* proceeding serves to question the right of a person or corporation to exercise a public franchise or office. *Alexander Oil Co. v. Seguin*, 825 S.W.2d 434, 436-37 (Tex. 1991). The term *quo warranto* (literally, "by what authority") derives from the common law writ so named. *See* Garner at 731-32.

Blue Cross/Texas to be both an insurance-like entity and a charitable and benevolent corporation." (Emphasis added.) We have rejected the argument that House Bill 191 required Blue Cross/Texas to be a charitable corporation to the extent that the *cy pres* doctrine would apply.

The Attorney General also directs us to *City of Longview v. Markham-McRee Memorial Hospital*, a tax-exemption case, as being instructive. 152 S.W.2d 1112 (Tex. 1941). He points out the case was being litigated at the time Blue Cross/Texas was incorporated.[15] To the extent that the court's opinion is instructive, it supports the proposition that a court should examine the actual activities of a corporation to determine its true nature. It was undisputed that Markham-McRee was a "charitable institution, and . . . engaged in the operation of the hospital in question as a charitable enterprise," *id.* at 1112, but because the hospital rented office space to physicians, it had engaged in a commercial transaction and was not entitled to an exemption from *ad valorem* taxes, *id.* at 1114. It is undisputed that Blue Cross/Texas never applied for an *ad valorem* tax exemption.

The *ad valorem* tax cases, like the *quo warranto* cases reviewed by the district court, did no more than provide guidance to the district court and play the same role in this Court. They are not conclusive. But the guidance such cases provide is substantial, because these types of cases are, for all practical purposes, the only cases that examine the question of what is a purely public charity. Because they uniformly support Blue Cross/Texas's position and the judgment of the district court, it is little wonder that the Attorney General argues that they are inapplicable. This Court has stated that an organization's "total operation may determine whether the organization meets the

---

[15] The court of civil appeals decided the case in 1939, the same year Blue Cross/Texas was incorporated. *See City of Longview v. Markham-McRee Mem'l Hosp.*, 134 S.W.2d 793 (Tex. Civ. App.—Texarkana 1939), *rev'd*, 152 S.W.2d 1112 (Tex. 1941).

23

requirements of a 'purely public charity.'" *Baptist Mem'ls Geriatric Ctr.*, 851 S.W.2d at 944 (citing *North Alamo Water Supply*, 804 S.W.2d at 898-99). In *North Alamo Water Supply*, the supreme court held that two water-supply corporations were not charities entitled to *ad valorem* tax exemptions because the

> benefits dispensed by these corporations do not in any way enure to the entire community but only to individual water district "members" who are able to pay for those benefits. These corporations are not organized to provide charitable services to the community as a whole but are organized solely for the purpose of selling water to those within the boundaries of the district who can afford to pay the costs assessed.

*North Alamo Water Supply*, 804 S.W.2d at 899 (footnote omitted). Here, the benefits dispensed by Blue Cross/Texas did not enure to an entire community but only to the corporation's individual members who paid premiums for the corporation's group hospital plan.

In *North Alamo Water Supply*, the supreme court provides a compendium of cases that examine the history of what constitutes a public charity in the *ad valorem* tax-exemption context. *See id.* at 897-99. These cases without exception require that to be a charity the organization must provide services beyond a defined group of persons for whose exclusive benefit it was organized. *See City of McAllen v. Evangelical Lutheran Good Samaritan Soc'y*, 530 S.W.2d 806, 810 (Tex. 1975); *City of Amarillo v. Amarillo Lodge No. 731*, 488 S.W.2d 69, 71 (Tex. 1972); *San Antonio Conservation Soc'y, Inc. v. City of San Antonio*, 455 S.W.2d 743, 745 (Tex. 1970); *City of Houston v. Scottish Rite Benevolent Ass'n*, 230 S.W. 978, 981 (Tex. 1921). The Attorney General's assertion that the district court placed undue reliance on these cases is no more than a reassertion of his position that House Bill 191 conclusively established that a corporation organized

under the statute's authorization is, *ipso facto*, a public charity—a position we reject. We further reject the notion that "public charity" should be defined in one manner for application of the *cy pres* doctrine and in another when applying the tax code.

Finally, the Attorney General generally complains, without citation to authority, that "[i]t was error on the part of the trial court to assume that the current operations of Blue Cross/Texas are paramount in determining its common-law charity status." We have reviewed in this opinion the findings of the district court. Although the district did consider the current operations of Blue Cross/Texas in concluding that Blue Cross/Texas was not a common-law charity, the court was entitled to look at all of the facts surrounding Blue Cross/Texas's operation in reaching his decision. *See North Alamo Water Supply*, 851 S.W.2d at 898-99; *Baptist Mem'ls Geriatric Cen.*, 851 S.W.2d at 944. The Attorney General's argument is a reiteration of his position that the district court and this Court may consider no more than Blue Cross/Texas's original incorporation to determine whether it was a charity—a position with which we disagree.

**CONCLUSION**

We have carefully examined the record from the district court, including the lengthy stipulations of the parties. We observe that the issue of whether House Bill 191 establishes a hospital plan corporation as a common-law charity has never been addressed by the courts of this state. House Bill 191 allowed a corporation providing group hospital plans to organize for the benefit of its members only, not for general charitable purposes. The corporation's members purchased the services of the corporation. The general public, on the other hand, had *no* access to those services. We hold that regardless of how Blue Cross/Texas was incorporated, the purpose of

the corporation controls and that purpose is determined from the corporation's purpose clause, as contained in its articles of incorporation, and its actual operations. Because the district court's judgment that Blue Cross/Texas was not a common-law charity is amply supported by the evidence, we affirm the judgment.

_____

Lee Yeakel, Justice

Before Justices B. A. Smith, Yeakel and Aboussie[*]

Affirmed.

Filed:   July 30, 2003

---

[*]   Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).