Affirmed and Opinion filed July 29, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00051-CV



 

Luis G. Taylor, Appellant

V.

First Community Credit Union, Appellee

 



On Appeal from the 189th
District Court

Harris County, Texas

Trial Court Cause No. 2007-16334



 

OPINION

The primary issue in this appeal is the applicability
of the “relation back” doctrine under sections 171.252 and 171.255 of the Texas
Tax Code governing director and officer liability for a corporation’s debts
when corporate privileges are forfeited for failure to file a required report. 
An officer and director of an automobile dealer appeals the trial court’s
judgment holding him liable for the dealer’s debts to a credit union.  We
affirm.

I.  Factual and Procedural Background

This
case was tried on an agreed statement of facts, which are set forth herein.[1] 


Texan
Automotive Inc. (“Automotive”), an automobile dealer, was a corporation
chartered under the laws of the State of Georgia in March 2003, and authorized
to do business in Texas in April 2003.  The company’s State of Texas franchise
tax report was due on September 7, 2004.  That report was never filed and on
September 8, 2004, the company became delinquent in filing this report. Automotive’s
corporate privileges were forfeited in January 2005 for failure to satisfy
franchise tax requirements and were never revived.  Automotive’s corporate certificate
was forfeited on May 6, 2005.  A few months later, the corporation was
dissolved in the State of Georgia. 

Appellant Luis G. Taylor served as a director of Automotive
from its inception through and after May 6, 2005.  Taylor was also an officer
of the company, serving initially as its secretary and then as its president,
an office he held through and after May 6, 2005.  

            Automotive entered
into a dealer agreement, dated November 10, 2003, with Centrix Financial, LLC[2]
(the “Dealer Agreement”).  Under the Dealer Agreement, appellee First Community
Credit Union (“First Community”) was granted the right to purchase retail
installment contracts from Automotive; Centrix was to act as First Community’s
agent for the procurement, credit assessment, collection, and servicing of
automobile loans.  Pursuant to the Dealer Agreement, First Community purchased four
retail automobile installment contracts in December 2004 and January 2005 and
paid the amounts financed under the contracts to Automotive.

            Automotive breached
its contractual obligations to First Community by failing to provide good title
to the motor vehicles Automotive sold to its customers under the installment contracts
as assigned to First Community.  The failure to provide good and marketable
title to each vehicle purchaser and a title with a valid lien in favor of First
Community not only breached Automotive’s obligations to both the vehicle
purchaser and lender, but also provided the vehicle purchaser with a defense
against the credit union as the holder of the retail installment agreement. 
Under the four contracts purchased from Automotive, certificates of title were
never delivered as agreed.  

            Automotive also
breached its warranties, under paragraph 3.1(b) of the Dealer Agreement,
requiring that a valid first lien would be obtained in favor of First Community
on any vehicles sold and transferred under the retail installment contracts and
that the contract would not be subject to any claims or defenses of vehicle
purchasers.  Automotive further breached section 3.2 of the Dealer Agreement,
providing that if any listed warranty or agreement were breached, Automotive would
repurchase the contracts from First Community for the remaining balances due
under the contracts within five days of demand.  

            After default,
and allowing for all credits and offsets, there remained due an unpaid aggregate
balance of $54,741.18 from the four installment contracts.  In March 2007, First
Community demanded that Automotive repurchase the defaulted retail installment
contracts for the amounts due; as of the date of trial, Automotive had failed
to do so.  Taylor, as president of the company, received the demand but neither
he nor any other person on behalf of Automotive responded.  

            First Community
brought suit against Automotive and Taylor seeking judgment for $54,741.18 in actual
damages, attorney’s fees, court costs, and prejudgment and postjudgment interest. 
First Community claimed that Taylor should be held personally liable for these debts
under section 171.255 of the Texas Tax Code.[3] 
Automotive failed to appear and answer.  After considering the parties’ agreed
statement of facts, the trial court rendered judgment that First Community
recover the sums requested from Automotive and Taylor jointly and severally. 
Taylor now appeals from the trial court’s judgment.

II.        Issues
and Analysis

A.   
Did the trial court reversibly
err by not filing findings of fact and conclusions of law?

            As a threshold
matter, Taylor asserts in his first issue that the trial court erred by failing
to file findings of fact and conclusions of law despite his timely request. 
Although the record in this case contains an agreed and undisputed statement of
facts, upon which the parties held a trial on the merits, the record does not
contain an agreed statement certified by the trial court to be correct.  See
Tex. R. Civ. P. 263
(requiring a signed agreed statement to be certified by the court to be
correct).  Texas Rule of Civil Procedure 263 governs the submission of matters
in controversy on an agreed statement of facts.  See id.  Strict
compliance with this rule is not required.  See Abbott v. Blue Cross
& Blue Shield of Tex., Inc., 113 S.W.3d 753, 757 (Tex. App.—Austin
2003, pet. denied).  When, as in this case, the record indicates that the trial
court heard the case on stipulated facts, a reviewing court may treat the case
as one involving an agreed statement of facts under Rule 263.  See id.;
State Farm Lloyds v. Kessler, 932 S.W.2d 732, 735 (Tex. App.—Fort Worth
1996, writ denied).  In an appeal from a trial court’s judgment on an agreed
case, the only issue on appeal is whether the trial court properly applied the
law to the agreed facts.  Abbott, 113 S.W.3d at 757.  As to the facts,
this court is limited in its consideration to the agreed facts.  See id.  We
conclude that the trial court did not reversibly err by failing to file
findings of fact and conclusions of law.  See id.  Therefore, we
overrule Taylor’s first issue.

B.    
Did the trial court err by concluding that the director and
officer is personally liable?

In his second issue, Taylor asserts that the trial
court erred by holding him personally liable under section 171.252, entitled
“Effects of Forfeiture,” and section 171.255, entitled “Liability of Directors
and Officers.”  Under section 171.252, if the corporate privileges of a
corporation are forfeited, “each director or officer of the corporation is
liable for a debt of the corporation as provided by section 171.255 of this
code.”  See Tex. Tax Code Ann.
§ 171.252(2) (Vernon 2008).  As relevant in this case, section 171.255
provides,

If the
corporate privileges of a corporation are forfeited for the failure to file a
report or pay a tax or penalty, each director or officer of the corporation is
liable for each debt of the corporation that is created or incurred in this
state after the date on which the report, tax, or penalty is due and before the
corporate privileges are revived.  . . .

Tex.
Tax Code Ann. §
171.255(a) (Vernon 2008). 

Taylor and First Community stipulated that
Automotive’s franchise tax report was due on September 7, 2004, was never
filed, and that corporate privileges were never revived.  See id.  Therefore, Taylor, as
director and officer of Automotive, is liable for each “debt” of the
corporation that was created or incurred after September 7, 2004, the date on
which the franchise tax report was due.  See id.   As relevant to this
case, a “debt” under section 171.255(a) is defined as “any legally enforceable
obligation measured in a certain amount of money which must be performed or
paid within an ascertainable period of time or on demand.”  Act of May 30,
1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735 (defining
“debt” as used in chapter 171), repealed by Act of May 2, 2006, 79th
Leg., 3rd C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 23 (effective January 1,
2008).        

Taylor stipulated that Automotive breached the Dealer
Agreement after September 7, 2004, resulting in the damages awarded by the
trial court.  Taylor, however, asserts that these breach-of-contract damages
“relate back” to November 2003, when Automotive executed the Dealer Agreement. 
Therefore, Taylor argues, this debt was not “created or incurred” after
September 7, 2004, and Taylor cannot be liable under sections 171.252 and
171.255.  This “relation back” doctrine is the only argument Taylor asserts
under his second issue.  Taylor cites three cases in support of this argument,
and we now examine the holdings in these cases.  See Schwab v. Schlumberger
Well Surveying Corp., 198 S.W.2d 79, 81–82 (Tex. 1946); Serna v. State,
877 S.W.2d 516, 519 (Tex. App.—Austin 1994, writ denied); Curry Auto
Leasing, Inc. v. Byrd, 683 S.W.2d 109, 110–12 (Tex. App.—Dallas 1984, no
writ).  

In Schwab, the Supreme Court of Texas held
that corporate officers and directors were not individually liable under a
predecessor statute to section 171.255.  See Schwab, 198 S.W.2d at
81–82.  The issue under that statute was whether the corporate “debt” was
“created or incurred” after a particular date.  See id.  The Schwab
court held that the terms “created” and “incurred” are unambiguous.  See id.
at 81.  The unambiguous meaning of “create” is “to bring into
existence something which did not exist,” and the unambiguous meaning of
“incur” is “brought on,” “occasioned,” or “caused.”  See id.  The Schwab
court did not address the meaning of the statutory term “debt.”  

In Schwab, the corporation executed an
original promissory note as evidence of a debt owed to Schlumberger Well
Surveying Corporation.  See id. at 80.  The corporation then executed a
series of six renewal notes, after which the corporation forfeited its right to
do business in Texas.  See id.  After this forfeiture, the corporation
executed another renewal note for the same indebtedness.  See id.  The
issue in Schwab was whether the debt in question was created or incurred
after the forfeiture date because the final promissory note was executed after
this date.  See id.  The Schwab court stated that the statute in
question was penal in nature and should be strictly construed so that it is not
extended beyond the clear import of its language.  See id. at 81. 
Significantly, the Schwab court did not articulate any “relation back”
doctrine; instead, the high court looked to Texas law regarding promissory notes. 
See id. 81–82.  Under that law, a renewal note does not create a new
debt; rather, the renewal note is new evidence of the existing debt that is
being renewed.  See id.  Therefore, the Schwab court held that,
even though the renewal note was executed after the forfeiture date, that note
created no debt but was new evidence of the debt that was created before the
forfeiture date.  See id.  The Schwab court held that because the
debt made the subject of the suit was created before the forfeiture date, the
officers and directors were not individually liable.  See id.  We
conclude that in Schwab the Supreme Court of Texas did not speak to and
did not establish the “relation back” doctrine upon which Taylor relies.

In the Byrd case, a corporation, as lessee,
entered into a motor vehicle lease on December 1, 1980.  See Byrd, 683
S.W.2d at 110.  Before the relevant forfeiture date, the lessee corporation
breached the lease, and the lessor terminated the lease and repossessed the leased
vehicle.  See id.  After the forfeiture date, the lessor sold the
vehicle, resulting in a deficiency amount, for which the lessor sued the lessee
and its officers.  See id. at 111.  In Byrd, the Fifth Court of
Appeals had to decide whether the lessors’ damages constituted a debt that was
created or incurred after the forfeiture date for the purposes of the version
of Chapter 171 that was then in effect.  See id. at 110–11.  The Byrd
court cited Schwab and relied on Schwab’s statement that such
statutes should be strictly construed.  See id. at 112.  The Byrd
court stated that “the statute does not impose liability on the officers of [the
lessee corporation] if the obligations . . . that create or incur the debt in
question pre-existed the forfeiture.”  Id.  The Byrd court then
concluded “that performance or implementation of the contractual provisions
relate back to and are authorized at the time of execution of the contract.”  Id. 


Though the Byrd court noted that the lessee
breached the lease and the lessor terminated the lease before the forfeiture
date, the court emphasized that the debt in question related back to the
execution of the lease on December 1, 1980 and therefore was created and
incurred before the forfeiture date.  See id.  Similarly, Taylor asserts
on appeal that, even though the installment contracts were executed after
September 7, 2004, and even though Automotive breached the Dealer Agreement and
caused First Community’s damages after this date, the debt in question relates
back to the execution of the Dealer Agreement on November 10, 2003.  The Byrd
case supports Taylor’s argument.[4]

Though not cited by either party on appeal, we
address this court’s opinion in River Oaks Shopping Center v. Pagan.  See
712 S.W.2d 190 (Tex. App.—Houston [14th Dist.] 1986, writ ref’d n.r.e.).  In Pagan,
a corporation, as lessee, executed a lease on April 11, 1978.  See id.
at 191.  The lessee forfeited its right to do business in Texas on September
15, 1979, and the breach of the lease upon which the lessor sued did not occur
until August 1980.  See id.  Nonetheless, a prior panel of this court
adopted the “relation back” doctrine from Byrd, concluding that the debt
from the post-forfeiture breach and damages related back to April 11, 1978, the
execution date of the lease.  See id. at 191–92.  Therefore, the Pagan
court concluded that, under section 171.255, the corporate debt was created and
incurred on April 11, 1978, and the officers of the lessee corporation were not
individually liable.  See id.  The Pagan case supports Taylor’s
argument under the “relation back” doctrine.

Absent a decision from a
higher court or this court sitting en banc that is on point and contrary to the
prior panel decision or an intervening and material change in the statutory
law, this court is bound by the prior holding of another panel of this court.  See
Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp., 309 S.W.3d 619, 630
(Tex. App.—Houston [14th Dist.] 2010, no pet.).  Research has revealed no
contrary decision from a higher court or from this court sitting en banc. 
However, a year after the Pagan opinion issued, the Texas Legislature
enacted a definition of “debt” as used in section 171.255.[5] 
See Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen.
Laws 1734, 1735 (defining “debt” as used in chapter 171) (repealed effective
2008).  Under this definition, which applies to the case now before this court,
a “debt” is “any legally enforceable obligation measured in a certain amount of
money which must be performed or paid within an ascertainable period of time or
on demand.”  Id.  The Schwab court stated that a statute like
section 171.255 should be strictly construed so that it is not extended beyond
the clear import of its language.  See Schwab, 198 S.W.2d at 81. 
However, the clear import of the definition added in 1987 was that a debt is a
legally enforceable obligation measured in a certain amount of money.  Under
the “relation back” doctrine, the execution of the Dealer Agreement on November
10, 2003, would create a debt under section 171.255, even though no party had
breached the agreement and even though there was no money owed under the
agreement at that time.  This result would conflict with the statutory
definition of “debt” enacted by the legislature in 1987.  The legislative addition
of this definition conflicts with the relation back doctrine followed by the Pagan
court and constitutes an intervening and material
change in the statutory law.  Therefore, we are not bound to follow the prior
panel decision in Pagan.  See Chase Home Fin., 309 S.W.3d
at 630.  

The “relation back” doctrine is not required by Schwab
or Byrd and is inconsistent with the unambiguous language of
the applicable definition of “debt” in Chapter 171.  Therefore, we conclude
that the “relation back” doctrine should not be applied in this case.  Inasmuch
as Taylor’s only argument under his second issue is premised on the
applicability of the “relation back” doctrine and this doctrine does not apply,
we overrule Taylor’s second issue.[6]

In his third issue, Taylor asserts that the evidence
is legally and factually insufficient to support a finding that Taylor is
personally liable under sections 171.252 and 171.255.  However, Taylor’s only
argument as to why the evidence is legally and factually insufficient is
premised on the applicability of the “relation back” doctrine, which we already
have held does not apply.  Presuming for the sake of argument that Taylor can
assert legal and factual insufficiency arguments on appeal from a judgment on
an agreed statement of facts, Taylor’s argument fails for the same reasons given
under our analysis of the second issue.  Accordingly, we overrule Taylor’s
third issue.

                                                            III.      Conclusion    

            The trial court did not reversibly err
by failing to file findings of fact and conclusions of law.  Under the
applicable version of Chapter 171, the “relation back” doctrine does not apply
to this case.  Accordingly, we affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of
Justices Frost, Boyce, and Sullivan.

 









[1]
See Tex. R. Civ. P. 263
(“Parties may submit matters in controversy to the court upon an agreed
statement of facts filed with the clerk . . . and such agreed statement signed
and certified by the court to be correct and the judgment rendered thereon
shall constitute the record of the cause.”).  





[2]
Centrix Financial, LLC was not a party at trial and is not a party on appeal.





[3]
Unless otherwise noted, all references to a “section” or a “chapter” pertain to
the Texas Tax Code.





[4]
Taylor also cites the Serna case, in which the court describes the
“relation back” doctrine from the Byrd case.  See Serna, 877
S.W.2d at 519.  However, the Serna court held that the “relation back”
doctrine did not apply to the case before that court, which involved debts
arising from statutory liability.  See id.   Therefore, the parts of Serna
upon which Taylor relies are obiter dicta.





[5]
Previously, the Texas Legislature had not defined this term.





[6]
In any event, the trial court did not err in
impliedly concluding that the debts in question were created or incurred after
September 7, 2004, and that Taylor is liable for these debts under section
171.255.